In the Matter of the Estate of ELIZABETH GRAHAM, Deceased.

Surrogate's Court, Kings County, November 25, 1932.

*John H. Schmid,* special guardian for Grace Elizabeth Bills, infant.

*Hamilton & Freeman,* for the petitioner.

WINGATE, S. Harold Graham, the son of the testatrix, having actually attained the age of twenty-one years during the lifetime

of his mother, the trust provisions contained in paragraph " fourth " of the instant will thereupon became ineffective, and the will must now be read as though such provisions were not therein contained. (*Matter of Pilsbury*, 50 Misc. 367; affd., 186 N. Y. 545; *Hughes* v. *Mackin*, 16 App. Div. 291; *Matter of Arensberg*, 120 id. 463; *Matter of Murray*, 124 id. 548.)

The " fifth " paragraph of the will reads as follows:

" *Fifth.* The remaining one quarter ($\frac{1}{4}$) part of my estate, I give, devise and bequeath to my executrix hereinafter named for the following purposes.

" 1. That my Executrix invest the said one quarter ($\frac{1}{4}$) part of my estate in legal securities on improved or unimproved real estate located in the City of New York.

" That such income arising from the investment of said one quarter ($\frac{1}{4}$) part of my estate be paid to my son Harold during the term of his natural life.

" (a) Upon the death of my said son Harold, I give, devise and bequeath the remainder of my estate to my children then surviving, or their issue, the issue to take the share its parent would have taken had it or they survived me."

It appears from the facts presented that the trust *res* comprises both real and personal property.

Harold Graham, the son of the testatrix, the life beneficiary of the trust above quoted, has refused to accept the provisions therein contained for his benefit as such life beneficiary, and has renounced his rights thereto. (*Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435.) The disposition to be made of this renounced gift cannot be known until the nature of the remainder interests has been determined. Had there been no substitutional provisions; had the testatrix, upon the death of the *cestui que trust*, given the remainders to her children *then* living, such remainders would clearly have been contingent. It is contended, however, on behalf of the three daughters of•the testatrix that the language of the substitutional gifts in remainder is such as to indicate an intention on the part of the testatrix that, despite the wording of the primary gifts, the remainders should vest at her death. The court does not so read the will. The testatrix has here expressed both a primary and a secondary intent. Her primary or dominant thought was distribution among those of her children who should be alive at the time of Harold's death. The alternative or substituted gifts, which are effective only upon the failure of the primary gifts, are subordinate to the previously expressed dominant intent, and in the construction of the paragraph now under consideration, the function and position of such secondary gifts must be kept

clearly in mind. Even though it be conceded that ambiguity of expression does exist, the court would not, therefore, be justified in that distortion of evident meaning which has been proposed by the remaindermen, namely, in striking from paragraph fifth, (a) the words " upon the death of Harold " and substituting therefor the words " upon my death."

Further, the language of the substitutional gifts in remainder is not necessarily inconsistent with the provisions of the preceding portion of the paragraph. Upon the death of Harold, the remainders are given to my " children then surviving, or their issue * * *; " the issue to take the share the parent would have taken *had such parent survived the testatrix and been entitled to take.*

It is the decision of the court, therefore, that the remainders are not indefeasibly vested, but are now contingently vested in the living daughters of the testatrix, subject to divestiture upon their death prior to that of the testatrix's son Harold. (*Lyons* v. *Ostrander,* 167 N. Y. 135, and cases cited; *Marsh* v. *Consumers Park Brewing Company,* 220 id. 205; *Matter of Buechner,* 226 id. 440; *Matter of Silsby,* 229 id. 396.)

The renunciation of the life beneficiary did not destroy the trust nor affect the validity thereof. (*Matter of Wentworth,* 230 N. Y. 176.)

It, therefore, becomes necessary for the court to determine the disposition to be made of the " income " of the trust during the life of the *cestui que trust.*

Section 63 of the Real Property Law, so far as here pertinent, reads as follows: " Undisposed profits. When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

In *Matter of Harteau* (204 N. Y. 292) the Court of Appeals held that this section is made applicable to personal property by virtue of section 11 of the Personal Property Law (as amd. by Laws of 1929, chap. 229). In this proceeding those presumptively entitled to the next eventual estate, and consequently to the receipt of the " income " of the trust fund, are the three living daughters of the testatrix, Ella, Ida and Grace. (*Matter of Hutchins,* 136 Misc. 270; *Matter of Grossman,* 131 id. 526.) (See, also, *Matter of Hartfield,* 139 id. 214; *Matter of Daggett,* 130 id. 635.)

Proceed accordingly.