In the Matter of the Estate of EMMA DEVINE, Deceased.

Surrogate's Court, New York County, April 3, 1933.

*Wollman & Wollman* [*Edward S. Seidman* of counsel], for the Bankers Trust Company, executor.

*Arthur W. Weg,* special guardian.

DELEHANTY, S. Paragraphs first and second of decedent's will make certain specific gifts. It then provides:

" *Third.* If my husband, William Devine (whose stage name is William Armstrong) of No. 215 West 101st Street, in the Borough of Manhattan, City, County and State of New York, survives me, then and in that event I give to my Executors and Trustees hereinafter named, in trust, one-half ($\frac{1}{2}$) of all the rest, residue and remainder of my property, real, personal and mixed. Said Executors and Trustees shall invest the same and pay the income thereof to my said husband, William Devine, during his life, and upon his death shall pay the principal thereof to my daughter, Dora Geiser, and if my said daughter is not then living, then to my granddaughter, Maxine Geiser."

Then follows at the foot of the same clause third: " *After the payment of the foregoing, I make the following bequests.*" (Note that the italization is that of testatrix.)

Then follow general bequests of money aggregating $9,500 and a residuary gift to descendants of the testatrix.

Presumably the testatrix believed that she would leave a substantial estate. Actually its gross value, after debts and administration expenses are paid, will probably not exceed $3,750.

Since the will is dated after August 31, 1930, the husband has the right to take absolutely his intestate share as against the provision for him in the will. He has elected to do so.

Since deceased also left a child, that intestate share is one-third of the balance after debts and administration expenses are paid. The specific bequests listed in articles first and second of the will have an appraised value of $1,050. On an assumed estate value of $3,750 the balance subject to the operation of the terms of paragraph third of the will is $2,700. The result, therefore, is that under the terms of the will the trust principal contemplated by paragraph third would not exceed $1,350. The intestate share is $1,250.

The election to take the intestate share has given rise to questions which appear not to have been heretofore considered and determined in this State. Counsel for the executor has submitted to the court a memorandum clearly outlining the problems to be considered and giving citations to pertinent authorities which have been of great assistance to the court in reaching a conclusion.

Decedent Estate Law, section 18, subdivision 1, paragraph (c), applies to the instant case and provides: " (c) Where the intestate share of the surviving spouse in the estate does not exceed twenty-five hundred dollars, the surviving spouse shall have such right to elect to take his or her intestate share absolutely, which shall be in lieu of any provision for his or her benefit in the will."

The first and immediate question is, from what source is the intestate share to be paid? Is it to be taken out of the sum available for the trust fund, or is it to be deducted from the gross of the estate?

It is to be noted that the quoted paragraph says nothing respecting the source of the fund. It states only that the exercise of the right of election deprives the spouse of any benefit otherwise provided for him in the will.

Reference to other paragraphs of subdivision 1 of section 18 discloses that in paragraphs (b) and (e) the statute expressly declares that the source of the intestate share shall in the one case be the trust fund principal and in the other case be so much of the trust fund principal as is needed to supplement the absolute legacy. Under paragraph (f) of the same subdivision the statute gives an election to take such sum as when added to other provisions for the spouse will equal the intestate share. Such additional sum must needs come from other assets of the estate.

It is to be noted that in respect of such paragraph (c) no source of the intestate share is therein indicated nor is there in this subdivision any declaration that " the terms of the will shall otherwise remain effective," though the other paragraphs of subdivision 1 so declare. This latter omission is covered by subdivision 2 of section 18, quoted below.

Since the statute permits a spouse to take absolutely his or her intestate share when it amounts to $2,500 or less, there may arise questions, such as are here for decision, in respect of any estate where a spouse survives and the gross estate, after administration expenses and debts are paid, is $5,000 or less. The same questions might also arise in respect of an estate of $7,500 or less, if a child also survives.

Some necessary results of the application of our statute should be noticed. In the case of a disinherited spouse the right to take the distributive share " as in intestacy " must needs be exercised against

the general assets of the estate. So also, if the entire estate had been specifically bequeathed the intestate share or any required balance thereof must necessarily be found in property specifically bequeathed to others. So too, if an outright legacy of less than the intestate share is given to the spouse, the source of the balance necessary to make up the intestate share must necessarily be the other assets of the estate. Again, should a trust fund be set up in an amount less than the intestate share it is clear that the trust fund cannot suffice to pay such share and that the balance must be sought in the remaining assets. It does not follow, however, that in determining the source of the intestate share, the terms of the will must be disregarded. The court has no authority to write a new will for a testator. The court must assume that in making a will after August 31, 1930, the testator does so in the knowledge that a surviving spouse may take his intestate share under the conditions and limitations expressed in Decedent Estate Law, section 18. In subdivision 2 of that section there is a general declaration which furnishes a rule of action. That subdivision states: " 2. Where any such election shall have been made, the will shall be valid as to the residue remaining after the elective share provided in this section has been deducted and the terms of the will shall as far as possible remain effective." Not only by reason of this statute but also because the court should always carry out as far as possible the testamentary intent, the will in this case has been searched to ascertain what were the purposes sought to be accomplished by the testatrix.

Plainly she intended that her husband should have during his life the income from half of her estate. This purpose is defeated by his election. It is equally clear that she intended that her daughter should have the same half of principal of the estate upon the termination of the intervening life estate. Testatrix thought she was disposing of an estate of at least $19,000, because out of the remaining half of her residuary estate she gave four general bequests aggregating $9,500. The first of these was an outright gift to her daughter of $5,000. The next, of $3,000, was to a grandson, but contingently this also was given to her daughter if the grandson did not attain twenty-five years. She next gave $1,000 to a religious organization and $500 to a sister-in-law. She provided, in addition, that if there was any residue after payment of the legacies directed by clauses third and seventh, inclusive, her daughter was to have the entire income thereon for her life and that if the daughter left issue, such issue would get such residue. Thus it is clear that testatrix intended that her daughter should be the chief beneficiary of the principal of the estate.

Having in mind this testamentary plan, is it consistent therewith to use the half of the estate intended for the trust fund as the source of payment to the husband of his intestate share? If this be done, there will be left in the fund for distribution to the daughter only $100, since the trust fund would amount only to $1,350 and the intestate share to $1,250. Is the italicized final declaration in clause third of the will, to wit, " *after the payment of the foregoing I make the following bequests*," a controlling declaration by the testatrix that in all events she wanted half of her residuary estate to go to her daughter before any consideration is given to subsequent general or residuary legatees? If so, must the intestate share be charged against the other half of the estate out of which the general legacies are payable and thereby substantially abate these legacies? Or is there a middle ground which would conform to the testamentary scheme and at the same time would recognize the relative equities of all legatees by charging the intestate share first against the gross assets after debts and administration expenses, and then dividing up the balance between the half of the estate intended for the daughter and the half intended for the general legatees, among whom the daughter is included?

Before determining which viewpoint should be adopted it is necessary to consider what effect the election has had on the testamentary scheme of erecting a trust of one-half of the estate. The husband takes no benefit from the trust provisions since by the terms of the statute the intestate share chosen by him is " in lieu of " the will terms. Does this result require the court to hold that the remainder has been accelerated and that the principal of the trust fund is presently payable to the daughter? Is the husband to be deemed dead so as to fix now the rights in the remainder or is the granddaughter entitled to have the trust fund sequestered until the death of the husband on the chance that her mother will predecease the husband and that she thereby will become entitled to the trust principal?

That result should be sought which will preserve so far as is possible the testamentary scheme and the relative equities of the beneficiaries. It would not be equitable to the beneficiaries of general legacies that the intestate share should be charged wholly against the second half of the estate. Neither would it conform to the testamentary scheme to absorb substantially all the first half of the estate intended ultimately for the daughter by charging against it the intestate share. Neither would it be in conformity with the testamentary intentions of this testatrix towards her daughter to have the trust fund set up and sequestered merely to await the death of the husband. The purpose in setting up the

fund was to supply an income to the husband. That purpose having been defeated, there is no longer any basis for assuming that the testatrix intended to have the fund tied up notwithstanding this failure of its real purpose. So far as the will deals with a life estate for the benefit of the husband its provisions must be deemed satisfied by the election. In the light of the testamentary scheme the court determines that the reference to the death of the husband as the date for distribution is to be considered, not as limited to the actual death, but as referring to the time when his life estate would cease. So reading the provision, the court holds that the payment to the daughter of the trust fund principal is accelerated and since the daughter is now living no interest in the trust fund passes to the granddaughter.

In reaching this conclusion reliance has been placed on decisions of the Supreme Court of Pennsylvania. The report of the Commission to Investigate Defects in the Law of Estates (Legislative Document [1928], No. 70) states the purpose of the Commission to adapt the already developed Pennsylvania practice to the requirements of this State. For this reason the law as stated by the courts of Pennsylvania is entitled to great weight in construing our statute. One of the latest declarations by the Supreme Court of Pennsylvania is the opinion in *Lonergan's Estate* (303 Penn. St. 142). This case definitely repudiated the rule-of-thumb policy theretofore announced in *Ferguson's Estate* (138 Penn. St. 208) and *Vance's Estate* (141 id. 201) to the effect that in every case the election by a spouse " is equivalent to his death." In its opinion the court, however, quoted with approval and adopted as a rule of construction in cases such as that here for decision, an excerpt from the opinion in *Feeney's Estate* (293 Penn. St. 273), wherein the Pennsylvania court quoted from 24 American and English Encyclopedia of Law ([2d ed.] 418) as follows: " ' A gift * * * to one for life, and from and after his decease to another, means from and after the determination of the preceding estate, and therefore, where the preceding estate is determined otherwise than by its regular expiration, the gift over, if vested at the time of such determination of the preceding estate, is accelerated and takes effect in possession immediately, having only been postponed for the benefit of the life tenant. [A] common instance in which the remainder is thus accelerated is where the devisee of the life estate refuses to accept it * * *. This doctrine of acceleration, however, is not an arbitrary one, but it is founded, in the case of a will, on the presumed intention of the testator that the remainderman should take on the failure of the previous estate notwithstanding the prior donee may be still alive, and is applied

in promotion of the presumed intention of the testator and not in defeat of his intention.'"

While in *Feeney's Estate* (*supra*) the question did not concern an election by a spouse, the rule of action there declared was stated in the opinion in *Lonergan's Estate* (*supra*) to be controlling when such an election had been made; and the court made clear that the choice between acceleration and sequestration depended in each case upon the testamentary scheme. For the same reasons which led the court in *Lonergan's Estate* (*supra*) to decree sequestration, the court here must decree acceleration, since thereby only will the testamentary scheme be preserved so far as is possible.

That this is the correct result is clear from the opinion in *Disston's Estate* (257 Penn. St. 537), referred to with approval in *Lonergan's Estate* (*supra*). In the *Disston* opinion the court said (p. 544): " the fact that the remainders given to the children may be contingent (*Coover's App.*, 74 Penn. St. 143, 147), or that alternative remainders may be provided for in the event of the decease of such children in the lifetime of the widow (*Wyllner's Est.*, 65 Penn. Sup. Ct. 396), will not take a case out of the operation of the general rule, if, on a view of the whole will, or the particular part in question, such alternate remainders appear to be merely secondary or substitutionary in character; see other cases, *supra*. As already indicated, we are of opinion that the trust created by the present testator was not intended to continue until the actual death of his widow, but only so long as she might have an interest in the estate passing under his will; when she elected to take against that instrument, the testator's full intent could not be carried out, and the trust came to an end to the same extent as though the widow had physically died; hence, the appellant's interest was accelerated, and the learned court below should have so held."

The same rule of interpretation has in principle been enunciated by our Court of Appeals (*Matter of Fordham*, 235 N. Y. 384). In that case the person upon whose life the estate was limited died before testatrix. The court said: "' Upon the death of Allan ' meant, therefore, upon the termination of the life estate bequeathed to Allan. If he died during her lifetime, the remainders would be accelerated; they would not be destroyed" (p. 387).

" Courts do not approach these problems in a spirit of rigid literalism. If they did, every testamentary gift of a remainder, ' upon ' the death of a tenant for life, would make succession in the stated order, not merely an expected event, but an indispensable condition. * * * If the trust became effective, she wished the class to be determined according to the situation existing when the life estate should end. We find no basis for the belief that she did

not wish it to be determined at all if the life estate should fail. The imputation of such a purpose is forbidden whether the will be subjected to the tests of probable intention, to be gathered from its scheme and framework, or to those of verbal criticism" (p. 389).

Following the requirement to maintain the testamentary scheme and to recognize relative equities, the court determines that the intestate share shall be charged against the general assets of the estate remaining after the satisfaction of the specific legacies. The balance thus found (in the instant case about $1,450) shall be divided into two equal portions. The first of these is to be deemed the adjusted principal of the trust fund and is payable forthwith to the daughter. The second of these is chargeable with general legacies in the aggregate sum of $9,500.

One of these general legacies is that provided under clause sixth of the will which says:

" *Sixth.* I give one thousand dollars ($1,000) to the Emanuel Congregation of the Borough of Manhattan, City of New York, in trust, to receive the income thereof in perpetuity, and apply the same to the care and maintenance of the Max Oscher Family Plot in Salem Field Cemetery, in Brooklyn, New York, and the monuments thereon."

Under the Surrogate's Court Act, section 314, subdivision 3, this bequest may be preferred. In view of the condition of the estate, this legacy will be made a first charge upon the second half of the estate but to the extent of $200 only, the court exercising its power so to reduce the legacy. (Pers. Prop. Law, § 13-a.)

Claim is made by Max Oscher that the legacy to him is preferred. He relies on the rule that abatement will be applied last to legacies to one in near relationship to the testator or one dependent on the testator for support and maintenance. No proof of actual dependence is offered. The daughter of deceased stands, of course, in closer relationship and the terms of the will negative any idea that the grandson was to be preferred to her. Therefore, the residue of the second half (or about $525) will be applied ratably to the payment of the three general legacies aggregating $8,500. The income during administration is to be likewise distributed ratably to the same three legatees. This is in part restitution to the legatees who suffer by the election. So far as interest on the trust principal is concerned the husband forfeited this when he made the election and the general legatees should have it. Interest on the balance of the estate would in any event go to the general legatees, since the effect of the abatement is to make them residuary legatees. This disposition of income is supported by the Pennsylvania authorities to which reference has already been made.

The interesting and difficult questions which have arisen in respect of this small estate emphasize the wisdom of the distinguished members of the Commission to Investigate Defects in the Law of Estates in not establishing any statutory rule respecting the source of the intestate share or the result of the election to take it. They no doubt foresaw the difficulties and preferred to leave the questions in each case to be decided on equitable principles in the light of the testamentary scheme of the individual will.

Submit decree accordingly.