In the Matter of the Estate of MILTON H. LEVY, Also Known as MILTON HAROLD LEVY, Deceased.

Surrogate's Court, Nassau County, May 25, 1939.

John Ross Lauer, for the Marine Midland Trust Company of New York, as executor, etc.

Albert M. Lockhart, special guardian for possible unborn issue of Michael Henry Levy.

HOWELL, S. In this accounting proceeding a question of construction arises as a result of the exercise by the decedent's widow of her right to take as against the provisions of the will.

The testator died June 13, 1937, leaving a will, dated July 24, 1935, which ·was probated and upon which letters testamentary were issued to the Marine Midland Trust Company of New York, as executor. The testator was in the insurance business and owner of a corporation known as the Michael Levy Company, Inc. He was also the owner of a corporation known as Linroad Realty Corporation. He had a wife, Jeanne Loughlin Levy, a daughter, Bernice Suzanne Canton, and a son, Michael Henry Levy. The latter was born September 16, 1913, and was, therefore, over twenty-one years of age when the will was made. He became associated with his father in the latter's insurance business in the year 1932 and, in the following year, received the necessary licenses so that, from then on, he was in charge of the life insurance department. After the making of the will but before his father's death, he became vice-president of the business, having entire charge thereof during his father's absence, and, since his father's death, has been running the business. At the time of the making of the will and at the time of his father's death, Michael Henry Levy was unmarried and had no intention of marrying. He has subsequently married. By his will, the testator, after making the usual provisions for payment of debts and funeral expenses, expressly disinherited his daughter. He then gave to his son, Michael Henry, the stock of Michael Levy Company, Inc., and all the testator's rights in commissions on renewal premiums of life insurance which testator had underwritten. The money value of these two gifts to the son was about $5,600. He then gave his wife the stock of the Linroad Realty Corporation, which was valued at approximately $15,000, the only assets of the corporation being the family residence at Great Neck in this county. He then left his residuary estate to his executor, in trust, to pay the net income to his widow in equal monthly installments " during her life or until her remarriage " and " upon her death or remarriage, I direct my said Trustee to convey, transfer and pay over to my son, Michael Henry Levy, the principal of said trust fund." He then provided for substitutionary gifts over of the remainder, in case his son should have died before the death or remarriage of the widow, to the son's issue, or, in default of· such issue then living, to the son's wife, or, in default of such wife then living, to testator's sister and mother or the survivor of them.

It seems quite clear to the court, reading the will in the light of the circumstances of the testator at the time of· its execution, that he

intended thereby to see that his wife was properly taken care of so long as she lived or should remain unmarried and that, apart from the provisions which he made to that end, he intended all of his estate to go to his son, Michael, and that the substitutionary gifts over, in the event of Michael's death, were precautionary to avoid a possible intestacy.

As the widow's intestate share of the estate would be one-third thereof, and as the trust for her benefit was restricted, not to her life, but until her remarriage, she had an absolute right to elect to take as against the provisions of the will under section 18 of the Decedent Estate Law, and properly exercised that right. (*Matter of Byrnes*, 260 N. Y. 465.)

The questions here presented relate to the effect of that election upon the carrying out of the terms of the testator's will. It is conceded that the legacy to the widow of the stock of Linroad Realty Corporation is first to be applied toward the payment to her of her one-third share of the net estate and the balance to be made up from the residuary estate. (*Matter of Curley*, 160 Misc. 844; *Matter of Fisher*, 159 id. 190.)

The disputed question is as to the disposition of the remaining two-thirds of the residuary estate. Must it be held in trust for Michael until the death or remarriage of the widow, income, in the meantime, payable to Michael as presumptive taker of the next eventual estate, or does the remainder accelerate so that that remaining two-thirds of the residuary is now payable absolutely to the son, Michael? It is conceded that if the remainder to the son, Michael, is vested, that remainder will be accelerated and the two-thirds balance of the residuary estate will be payable immediately to Michael. The special guardian, however, contends that that remainder is contingent and, being contingent, cannot be accelerated. It is necessary, therefore, first, to determine whether the remainder to Michael is vested or contingent for, if it is vested, all agree that it accelerates.

In the final analysis, the question whether a remainder is vested or contingent always turns upon the intention of the testator. Consequently, precedents are of no great assistance. No two wills are alike and, even if two wills are substantially similar, nevertheless, the circumstances to be taken into consideration as bearing upon the question of intention are always different.

The argument of the special guardian that the remainder is contingent rests upon his assertion that, there being no present words of gift of the remainder, the only words of gift being found in the direction to pay over upon the widow's death, the so-called "divide and pay over" rule is applicable and the remainder,

necessarily, contingent. On the other hand, it is urged that this is not a case of " divide and pay over " but, rather, of a gift to the son, Michael, by name, by direction to convey and transfer the remainder to him rather than a direction to " divide and pay over " to a class determinable only upon the life tenant's death. The so-called " divide and pay over " rule is, in substance, this: Where, in the will, there are no words of present gift and the gift is to be found only in a direction to divide and pay over at a future time, so that futurity is annexed to the substance of the gift, the vesting is suspended. That rule, however, is not a rule of law. It is, rather, a canon of construction applied only in an effort to answer the primary question, namely, the intention of the testator, and is, therefore, of course, subordinate to that intention and may not be applied if destructive thereof. It will not be applied if it may be seen that the intent of the testator was merely to postpone payment of the remainder in order to let in an intermediate estate for, in such a case, futurity is not annexed to the substance of the gift, the right to the remainder vests immediately, enjoyment and possession only being postponed and possibly subject to being lost by death of the remainderman before the death of the life tenant. (*Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573; *Matter of Crane,* 164 id. 71.)

On the other hand, it is, and always has been, the general policy of the law to favor such a construction of the will as will vest an estate at the earliest possible moment. Hence, the " divide and pay over " canon will yield to slight indication of a contrary intent; and, as the law generally favors vesting, a postponement of vesting will not be imputed unless the intention to do so is unequivocally expressed. The remainder will be construed as vested if it may be so construed consistently with the testator's intent and will never be presumed to be contingent unless the language is clear and unequivocal to that effect. This policy of the law is to be preferred over the application of the " divide and pay over " rule. (*Matter of Chalmers,* 264 N. Y. 219; *Matter of Watson,* 262 id. 284; *Cammann* v. *Bailey,* 210 id. 19; *Hersee* v. *Simpson,* 154 id. 496; *Matter of Kelly,* 167 Misc. 751; *Matter of Soy,* 143 id. 217.)

In brief, it may be said that if the gift of the remainder in the will can be found only in a direction to " divide and pay over " upon the life tenant's death or remarriage, the canon would apply and the remainder be contingent; but, even where there are no words of present gift and the only words of gift are found in such direction to " divide and pay over " in the future, if the direction to pay over is not to pay over to a class which can be determined only upon the death of the life tenant, but is a direction to pay

over to remaindermen specified by name, the interests of those remaindermen thus named will vest in them at testator's death in spite of the fact that the words of gift are not in the present tense but are, rather, in a direction to pay over at a future time. (*Matter of Banker*, 223 App. Div. 496; affd., 248 N. Y. 596; *Matter of Soy*, 143 Misc. 217; *Matter of Dudley*, 168 id. 695; *Matter of Merriam*, Id. 932; *Matter of Mathews*, 154 id. 779.) Further citation or discussion of the authorities sustaining that principle is unnecessary as they have been thoroughly collated in many of the cases above cited, the principle applied being that in cases of trusts with direction to pay over and transfer the remainder upon the death of the trust beneficiary to named person or persons, such words are held to postpone enjoyment only and do not import contingency.

Both the executor and the special guardian, in the instant case, have well briefed the authorities. Many of those cited are of little or no assistance in a determination of the instant case because the gifts over there involved were gifts, not to named persons, but to a class determinable only at the close of the life estate. In the instant case, on the contrary, the gift of the remainder is to a named person, the son of the testator, and, had the provisions of the will there ended, unquestionably, the remainder to the son would be held to be a vested remainder. It is none the less vested because of the substitutionary gifts over in the event of his death before that of the life tenant. The remainder to the son, nevertheless, remains vested subject only to be divested by his death before the end of the trust. That is, the gift to him is not a gift limited to take effect only in the event of his survival of the life tenant, but is a gift, the right to which vests in him, the enjoyment and possession of the thing given being postponed and being possibly subject to defeat by his death before the end of the trust.

In applying the " divide and pay over " rule, the remainder will be held vested, not only if the direction to " divide and pay over " be coupled with the present gift, but, also, if there be found in the will, construed in the light of the circumstances under which it was made, an intention on the part of the testator to vest the remainder. (*New York Life Insurance & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Bump*, 234 id. 60.)

Viewing the present will in the light of surrounding circumstances, namely, the disinheritance of the daughter, the clear intent of the testator that his son should succeed him in his insurance business and that, in the meantime, the testator's widow should be provided for during her life or until her remarriage, it seems obvious to the court that the main objects of testator's bounty were his wife and his son and, in creating the trust of his residuary estate, his main

purpose was to provide for the devolution of his estate to his son, subject to such support of his widow, and that, consequently, futurity was not annexed to the substance of the gift to the son but that the substitutionary gifts over, in case of the son's death, were precautionary measures taken by the testator to avoid the possibility of intestacy.

The question of the effect of the exercise of a widow's election to take as against the will upon such a trust has been discussed by several of the surrogates.

*Matter of Devine* (147 Misc. 273), by Surrogate DELEHANTY, of New York county, involved a will whereby the testatrix left one-half of her residuary estate in trust, to pay the income to her husband for life and, upon his death, to pay the principal to testatrix's named daughter and, if such daughter should not then be living, then to testatrix's named granddaughter. That, therefore, was a will much similar to the will presently under discussion, the trust being given for the benefit of the husband for life, with no words of present gift of the remainder but, rather, a direction to pay over such remainder upon the husband's death to a named daughter, or, if she be not then living, to a named granddaughter. In that case, as in this, it was clear that the testator intended that the surviving spouse should have the benefit of the income and that the child should have the principal upon the termination of the life estate, thus clearly indicating that the latter should be the chief beneficiary of the principal of the estate. The same question was presented there as is here, namely, whether the exercise of the surviving spouse's election to take against the will resulted in an acceleration of the remainder so that the principal became presently payable to the daughter, or whether the trust must be continued until the surviving spouse should die. Concededly, the result to be sought was that which would preserve, so far as is possible, the testamentary scheme and the relative equities of the beneficiaries. The primary purpose of the trust, namely, to provide an income for the surviving spouse, having been defeated, there would no longer be any basis for assuming that testator intended to have the principal continue to be tied up in trust. Surrogate DELEHANTY, therefore, determined, in the light of the testamentary scheme, that the reference to the death of the husband at the time for distribution of the remainder was not to be considered as limited to his actual death but, rather, as to the time when his life estate should cease, and that, therefore, payment of the principal of the trust fund to the daughter was accelerated. In reaching that determination, he relied upon decisions of Pennsylvania construing the effect of a similar statute. He referred to *Matter of Disston* (257 Penn. St. 537; 101 A. 804) as

indicating that, in such a case, remainders might be accelerated even if they were contingent. However, he also referred to the later case of *Matter of Lonergan* (303 Penn. St. 142; 154 A. 387) which repudiated the policy theretofore announced to the effect that, in every case, the exercise of an election was equivalent to his death, so that, in all cases, the remainder would accelerate. On the contrary, the Pennsylvania court, in the case last cited, said that the gift over in remainder if vested at the time of such determination of the preceding estate would be accelerated and take effect in possession immediately, such possession having been postponed only for the benefit of the life tenant; and further indicated clearly that the doctrine of acceleration was not an arbitrary one but was founded on the presumed intention of the testator and would be applied in promotion of that presumed intention and not in defeat of it, with the result that the choice between acceleration and sequestration would, in each case, depend upon the testamentary scheme.

In *Matter of Byrnes* (149 Misc. 449), decided shortly thereafter by Surrogate FOLEY, the residuary estate was left in trust to the widow for her life or until her remarriage, remainder, upon her death or remarriage, to such of the children of testator's brother as should be living at the time of such death or remarriage and to the the issue of any deceased child of such brother then living. Clearly, in that case, as Surrogate FOLEY said, the remainder was contingent because it was given to a class, the membership of which could only be ascertained and fixed at the date of the widow's remarriage or death. Referring to *Matter of Devine* (*supra*) he agreed with his colleague, Surrogate DELEHANTY, that the result sought should be one which would preserve, as far as possible, the testamentary scheme and the relative equities of the beneficiary. It was argued in that case that the effect of the exercise by the widow of her right of election was equivalent to her death and that the remainder should be accelerated and paid over presently just as if the widow's death had then occurred. In other words, the contention thus urged was the rule which had been applied in the Pennsylvania cases prior to the decision in the case of *Matter of Lonergan* (*supra*). Surrogate FOLEY held the contention without foundation because, the remainder being clearly contingent, under the firmly established rules which had been consistently applied by the Court of Appeals, a contingent remainder may never be accelerated upon failure of the intermediate estate. The learned surrogate pointed out the basis for that rule. By its application, the intent of the testator to give the remainder to a class determinable only upon the happening of an event fixed by the testator could be effectuated; while, if

the remainder were accelerated, the class who would take would be changed from those selected by the testator to a class chosen by the court and, thus, the intent of the testator destroyed. Where, however, the remainder is vested in title and interest, even if not in enjoyment and possession, acceleration is desirable and should be enforced. As the remainder in the *Byrnes* case, however, was clearly contingent, it could not be thus accelerated. Referring to the Pennsylvania cases, Surrogate FOLEY found that the opinion in the *Lonergan* case appeared to distinguish the opinion in the *Disston* case and indicated that the remainder would not be accelerated in every case and that the rule of acceleration was not fixed and absolute; and concluded that whatever may be the Pennsylvania rule, that in New York which prohibits the acceleration of contingent remainders is too firmly established to permit a departure from it.

In *Matter of Mancinelli* (158 Misc. 605), decided by Surrogate HENDERSON, in Bronx county, the testator left his residuary estate in trust for the benefit of his wife for life, remainder to his two brothers by name. The court held the remainders vested and that they were accelerated upon the exercise by the wife of her election to take as against the will. That, therefore, was a case similar to the *Devine* case (*supra*), of a gift of the remainder to a named person or persons rather than a gift in remainder to a class determinable only on the death of the life tenant as in the *Byrnes* case (*supra*).

In *Matter of Ferrara* (165 Misc. 900), where testatrix by her will gave a life estate in real property to her husband to terminate upon his death or remarriage with remainder to the testatrix's named children or the issue of any dying before the death or remarriage of the husband, Surrogate WINGATE held that the remainder could not be accelerated as the identity of the remaindermen could be determined only at the time of the death or remarriage of the husband, basing his decision upon the principle that the remainder may not be accelerated if it is not vested, and citing his own decision in support thereof (*Matter of Curley*, 160 Misc. 844). In that case, however, the residuary bequest was to a class consisting of the children of the testatrix's named brothers and, in the event of the death of any of them before the testatrix leaving a child or children, the latter to take its parent's share. This, clearly, was a vested remainder and was so held to be by the surrogate and, in the course of his opinion, he reasserted the principle that if the trust has been created for the benefit of the surviving spouse, and the remainder is vested, it will be accelerated and the remainderman entitled to receive the remainder immediately. It may well be, therefore, that in the *Ferrara* case, Surrogate WINGATE correctly held the

remainder contingent, upon the ground that it was given to a class determinable only at the death of the life tenant.

However, where the gift of the remainder, although expressed only in a direction to pay over at a future time, is to a named person, the principle referred to above, holding such remainder to be vested, subject, possibly, to be divested by the death of the named remainderman before that of the life tenant, is consistently applied even though there be substitutionary gifts over of the remainder, which substitutionary gifts would be contingent. Such was the decision of this court in *Matter of Mathews* (154 Misc. 779), where testatrix, by her will, left her residuary estate in trust for her husband, for life, and, at his death, to divide the principal between her two named sons, William and John, with the proviso that the issue of any deceased child should take the parent's share. This latter clause the court held to be obviously a substitutionary clause meaning that if one of the sons should die during the life estate of the life tenant, his issue would take in his place the share which he would have taken had he survived; and that, consequently, each son took a vested remainder subject to be divested by his death before that of the life tenant. This court there pointed out the distinction as shown by *Matter of Gurlitz* (134 Misc. 160) and *Matter of Burdsall* (128 id. 582; affd., 221 App. Div. 756). In the *Gurlitz* case testatrix gave a life estate to her husband and directed that, upon his death, the principal be equally divided " among my children." There the gift of the remainder could be found only in the direction to pay at a future time to a class which could be determined only at that time, with the result that futurity was annexed to the substance of the gift and the vesting was suspended. In the *Burdsall* case, on the other hand, the trust was for the life of the testator's named sister, Edith, the remainder over, upon her death, to testator's two named cousins with a substitutionary gift over of the remainders, in the event of the death of either of such named cousins during the life tenant's lifetime. Surrogate SLATER, in an opinion upon which affirmance was had by the Appellate Division, held that the remainders vested.

Two more recent decisions by Surrogate DELEHANTY, of New York county, are in accord with that principle. (*Matter of Dudley*, 168 Misc. 695; *Matter of Merriam*, Id. 932.) In the *Dudley* case the testator gave his residuary estate, in trust, for his named sister, with a direction, upon her death, to pay over the principal to certain of testator's named nieces and nephews, with a substitutionary provision that the descendants of any deceased niece or nephew thus named should take by representation the parent's

share. In such a situation, said the learned surrogate, the law is well established that a strong inference arises to the effect that the subject-matter of the gift was intended to and did vest in the named remaindermen upon the death of the testator. In the *Merriam* case (*supra*) the testator provided for a trust for the benefit of his named sister for life and directed the trustee, upon her death, to pay over the principal to certain named persons, with a substitutionary gift over to the survivors in the case of the death of any one of them during the life of the life tenant. Calling attention to the fact that the gift of the remainder was to persons by name, the surrogate said that there was thus brought into effect one of the primary rules of construction, namely, that the vesting of estates is favored, that remainders will be held to vest unless a contrary intention is unequivocally expressed and that a gift to persons by name is indicative of an intention to vest a remainder according to a rule which seems to have greater force than the so-called " divide and pay over " rule.

I arrive at the conclusion, in the instant case, from a reading of the will in the light of the circumstances surrounding the testator when he made it, that his intention was primarily to provide that his estate should pass to his son, Michael, enjoyment thereof only being postponed to let in the intermediate estate for the support or benefit of his wife and that that intention is not and should not be held to be destroyed by the use of the words directing payment over rather than words of present gift; and that words of present gift should be imported into the will to carry out what seems clearly to the court to have been the testator's intention. Consequently, the remainder vested in his son, Michael, subject to be divested as to enjoyment by his death before the termination of the trust, and that remainder being vested when the widow exercised her right of election, it is accelerated and passes immediately to the son.

Submit decree.