OPINION OF THE COURT
Millard L. Midonick, J.
The question presented in this construction proceeding— whether a renunciation by the income beneficiary of a trust accelerates the remainder — has apparently been resolved in favor of acceleration by EPTL 2-1.11 (subd [d]) for decedent’s dying after its effective date (Aug. 11, 1977). In this case, however, the decedent died in 1951 leaving a will which he had executed in 1947. His widow renounced her interest in the residuary trust, which is the subject of this proceeding, as part of a judicially approved compromise which also provided for the payment of $400 monthly to decedent’s prior wife for her life. This renunciation antedated the statutory provisions for the renunciation of a legacy (first embodied in EPTL 3-3.10, eff Nov. 3, 1971) and was based on the common-law right of a legatee to renounce (Albany Hosp. v Albany Guardian Soc. & Home for Friendless, 214 NY 435). Surrogate Collins approved the renunciation: "The fact that the renounced legacy consists in part of the right to income from the residuary trust and that such right would be inalienable if once accepted, does not bar an effective renunciation by one who never accepted the legacy. (Matter of Wilson, N. Y. L. J., November 12, 1953 and cases cited).” (Matter of Paine, NYLJ, April 22, 1955, p 8, col 5.)
At the time of the execution of the will and when the testator died, he had one child, his daughter Louise. He left his entire residuary estate in trust to pay the income to his widow for her life. If she died before December 31, 1977, as she did not, he provided that the trust continue until that date (so long as Louise was still alive) with the evident intention of allowing time for his daughter to attain sufficient maturity before the entire principal was distributable. If his wife died before December 31, 1977 and Louise was living, the trustees had discretion to pay a certain amount of the trust income to her daughter (his stepdaughter Mary) until she attained the age of 21, which she did on May 22, 1955. The balance of the trust income was to be paid "equally to all my children, including Louise * * * and irrespective of any other *395 provisions heretofore made for her support”. As indicated above, the testator had no other children. The trustees were also authorized during the trust term to invade corpus to the extent of: 30% for the widow "if, in their opinion, such invasion is necessary to keep her from privation or serious discomfort” (This interest was also renounced by the widow); 20% for the testator’s cousin Elizabeth if, in the trustees’ opinion, she is "in want of the reasonable necessities of life”; and 20% to his daughter Louise if she "has no sufficient other income to maintain and educate her”.
Upon the termination of the trust the testator provided that the principal then remaining "shall be divided equally per stirpes among all my issue, including Louise Mitchell Paine, my only child at present, and any other children which I may have in the future”.
The question of the effect of the widow’s renunciation was only partially disposed of by Surrogate Collins. He ruled that the trust must in all events continue until December 31, 1977, assuming that Louise survived until that time — as she did. The issue of whether the trust would continue after that date was expressly deferred since it might become academic, for example, by virtue of the widow’s prior death. This issue is now ripe for decision since the widow is still living and the specified date has passed.
It is the contention of the testator’s daughter Louise that the widow’s renunciation accelerated the remainder so that it became distributable to her when the year 1977 ended just as if the widow had predeceased the testator. The guardian ad litem for Louise’s infant children contends, on the other hand, that since neither EPTL 2-1.11 nor its predecessor EPTL 3-3.10 apply because the decedent died before their effective dates, the trust must continue during the widow’s life to protect his wards’ contingent interest which is conditioned on the possibility that Louise might predecease the widow.
The first statutory provision for the renunciation of a legacy was EPTL 3-3.10 which was still in effect on December 31, 1977. Subdivision (c) of this statute basically provides that the filing of a renunciation has the same effect with respect to the renounced interest as though the renouncing person had predeceased the testator unless, of course, the testator provided to the contrary. Under EPTL 3-3.10 problems arose (see Rohan, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 2-1.11, 1979-1980 Pocket Part, p 47) with *396 respect to whether remainders could be accelerated where this necessitated the so-called destruction of a trust or where the remainders were contingent rather than vested. In Matter of Schloessinger (70 Misc 2d 206) I held that a remainder passing upon the renouncing income beneficiary’s death to her three named children, if living, followed by a substitutionary gift for the share of any child who was not then living was accelerated by this statute, relying on the plain meaning of the statutory equation of a renunciation with the renouncing party’s having predeceased the testator. That was the uniform construction of EPTL 3-3.10 in this county (Matter of Chadbourne, 92 Misc 2d 648; Matter of Jacobs, 92 Misc 2d 617; Matter of Gayley, NYLJ, Sept. 14, 1978, p 6, col 3). To the same effect see Matter of Delavan (95 Misc 2d 540).
In Matter of Dexter (75 Misc 2d 239), however, the court declined to accelerate a remainder under this statute on the ground that to do so would violate the long-standing New York doctrine of the indestructibility of trusts. This doctrine derived from the New York law which classifies most trusts as spendthrift trusts with the consequent restriction of the income beneficiary’s power to assign or release the trust income or to consent to the termination of the trust (EPTL 7-1.5; Matter of Wentworth, 230 NY 176). As the court indicated in Matter of Slade (79 Misc 2d 578) this doctrine can coexist with a rule permitting an income beneficiary to renounce his or her interest before it comes into being. Acceleration is simply a logical extension of the renunciation which need not invoke the doctrine of indestructibility.
The amendment of the statute in EPTL 2-1.11 (subd [d]) in effect ratifies the Schloessinger approach. The statute now specifies that a renunciation has the effect of accelerating the possession and enjoyment of subsequent interests. As Schloessinger indicates, however, there are constitutional issues which impede the direct application of these later enacted statutes to a will which took effect before they became effective. (Matter of Schloessinger, 70 Misc 2d 206, 207.) The petitioning trustee adverts to two principal lines of authority which would prevent the acceleration of remainders in the absence of such statutory authority: Matter of Waring (293 NY 186) represents a very literal adherence to the plain meaning of a substitutional remainder. That case involved the renunciation by a vested remainderman of a portion of her remainder interest after the life estate had terminated. The *397 court held that since the remainderman was alive when the trust terminated, the portion of her interest which she had renounced would not pass under the gift over to her issue as if she was not then living because the specific event which would trigger the substantial remainder had not occurred. Since the testator had provided that his sister’s issue would take the remainder if she failed to survive the trust term, the court refused to treat her renunciation of a part of that remainder as if she had failed to survive for purposes of invoking the substitutional gift to her issue.
In Matter of Mixter (83 Misc 2d 290) I declined to apply the Waring rationale and ruled that the effect of the renunciation by a remainderman was to pass his interest to his issue as if he had predeceased the trust term. For the same reasons, the presumed intention of the testator and the Legislature’s enactment of EPTL 3-3.10 as a reflection of the public policy favoring the implementation of this presumed intent (Matter of Mixter, supra, at pp 294-295), I hold that the literal language of the instant will, under which the remainder follows a trust term measured by the life of the testator’s widow, does not bar acceleration. The Mixter case did not, however, involve cutting off the property rights of nonconsenting parties and the constitutional issues inherent in so doing. The decedent’s daughter relies on Mixter to support her argument that EPTL 3-3.10 and 2-1.11 can be applied retroactively to accelerate the trust remainder, but that case did not involve acceleration with the attendant cutting off of future interests. All that was decided in Mixter (supra) was that upon the ultimate termination of the trust the remainder would not go to the testator’s nephew as she had specified because he had renounced, but would go to his issue even if he was then living. In reaching the Mixter result I was relying on the intervening change of attitude with respect to renunciation which the statute reflected to deviate from Waring (supra) and not authorizing the automatic retroactive application of the statute.
The other authorities cited by the trustee as pointing against the requested acceleration rely principally upon the indestructibility of trusts doctrine discussed earlier. (Matter of Roe, 18 Misc 2d 970; Matter of Wolff, 11 Misc 2d 709; Matter of Hanna, 155 Misc 2d 833; Matter of Graham, 145 Misc 628.) The leading authority cited for this indestructability concept is Matter of Wentworth (230 NY 176, supra) which, of course, *398 simply upholds the spendthrift trust doctrine restricting an income beneficiary’s right to alienate, assign or waive the right to trust income. There is no good reason for extending this doctrine to require the continuation of a trust after the income beneficiary, for whose benefit the doctrine exists, has been permitted to renounce (Griswold, Spendthrift Trusts [2d ed], § 524, p 604). One explanation may be seen in Matter of Hanna (supra) where Surrogate Foley indicated that he was expounding a policy for the Depression era which he felt was impelling beneficiaries to enter into ill-advised forced sales of their interests and trying therefore to destroy trusts. (See Matter of Hanna, 155 Misc 833, 834.) The current atmosphere is entirely different; the disclaimer is a respected part of postmortem estate planning. (Post-Mortem Estate Planning 1979 [Practicing Law Institute Handbook], p 112.)
Moreover, there is a parallel line of cases which sanctions the acceleration of remainders: the leading case in this line is Surrogate Delehanty’s decision in Matter of Devine (147 Misc 273). The issue was the effect of the surviving spouse’s exercise of his right of election to obtain an outright share of the estate on the testamentary trust for his benefit. The testatrix in Devine provided that her husband receive the trust income for his life, upon his death the principal was to go to her named daughter or, if she was not then living, to her named granddaughter. The exercise of the right of election was held to negate the husband’s interest in the trust. Held, the remainder to the daughter was accelerated. The rationale for this result was the preservation of the decedent’s basic testamentary scheme. "In the light of the testamentary scheme the court determines that the reference to the death of the husband as the date for distribution is to be considered, not as limited to the actual death, but as referring to the time when his life estate would cease”. (Matter of Devine, supra, at p 278). The thrust of the Devine opinion is that acceleration represents the decedent’s presumed intent and there is no weight given to the classification of the remainder interests as vested or contingent. (See, to the same effect, Matter of Austin, 50 Misc 2d 972; Matter of Wiener, 34 Misc 2d 60.) Subsequent cases diverge to hold that contingent remainders may not be accelerated. (See Matter of Levy, 171 Misc 431.) The cases draw a fine line under which a vested remainder subject to defeasance may be accelerated, but not a contingent remainder (Matter of Giddings, 198 Misc 536).
*399 The acceleration issue arises in these right of election cases because the surviving spouse foregoes the trust income for an outright share of the estate. Other circumstances, such as the desire to obtain the benefit of the estate tax marital deduction, sometimes produce the same pattern and should have the same legal consequences since the intention-based rationale for the acceleration is equally applicable. (See 2A Powell, Real Property, par 309, subd [2].) Matter of Haley (56 Misc 2d 278) represents the application of this approach beyond the right of election area. There the decedent died before the effective dates of the renunciation statutes discussed above. His will created trusts to pay the income to his widow, remainder to his named children with gifts over if the children were not living when his wife died. The widow stipulated with the executors that these bequests to her were revoked by virtue of a separation agreement she had entered into with the decedent. Held, the remainders to the testator’s two children were accelerated. "This conclusion leads to a second question: can the principal of the trusts as funded under the provisions of paragraphs fourth and fifth be accelerated and immediately distributed, since the primary beneficiary has agreed that she is to take nothing under her ex-husband’s will? The answer to this question lies in an examination of testator’s intention as expressed in the will, as a general rule 'succeeding interests are accelerated except when (a) the terms and circumstances of the limitation manifest a contrary intent’. (2 Restatement, Property, (1936) § 231.) (And, see, 2 Powell, Real Property, § 309, p. 635 [1967 ed.].) As to the interest created in favor of the named daughter in paragraph fourth, it is quite clear that as an estate vested subject to complete defeasance (see EPTL 6-4.9 and Real Property Law, former § 40-b), the daughter’s interest is accelerable (2 Powell, Real Property, § 309, p. 641 and Matter of Levy, 171 Misc. 431; Matter of Giddings, 198 Misc. 536 and Matter of Devine, 147 Misc. 273) unless the language of the will indicates an intention that her interest remain defeasible until the death of the measuring life. It is apparent that testator’s purposes in paragraph fourth were twofold: to create a fund which would not only provide the widow with a satisfactory income and with a corpus sufficient to qualify for the benefits of the marital deduction, with the unavoidable power of appointment therein entailed, but also, in the event and to the extent that neither the power of invasion nor the power of appointment *400 therein granted was exercised, to provide a remainder interest in favor of his named daughter, if then surviving, or to her then surviving descendants. Since the first purpose has been defeated, there seems to be no reason for continuing the corpus of paragraph fourth in trust, and, as a result this court holds that the trust created by paragraph fourth is accelerated and the corpus is payable to Shirley Haley Hollis, absolutely unrestricted by any of the limitations of the trust.” (Matter of Haley, supra, at pp 284-285.)
The testator in this case clearly intended to benefit his daughter Louise, his only child, once his obligation to his widow was discharged by her death. That obligation was discharged by the widow’s renunciation pursuant to the compromise agreement referred to in the 1955 decision by Surrogate Collins. The most reasonably inferred intention from the testamentary scheme and the surrounding circumstances is that in the absence of any need to continue to pay income to his widow, whether by virtue of her death or her renunciation, the trust remainder would be distributable to his daughter, Louise. (2A Powell, Real Property, par 309, subd [1].) As Surrogate Delehanty said in Matter of Devine (147 Misc 273, 278, supra) "[t]hat purpose having been defeated, there is no longer any basis for assuming that the testatrix intended to have the fund tied up”. Furthermore, the disposition of the trust principal here should be classified for this purpose as a vested remainder subject to defeasance and thus eligible for acceleration consonant with the cases which expressly require that a remainder be vested rather than contingent before it can be accelerated. The fact that the testator names the remainderman is given a great deal of weight as evidence of intention (see Matter of Ablett, 3 NY2d 261, 270) in determining that a remainder is vested. (Matter of Leekoif, 36 Misc 2d 25; Matter of Bleier, 20 Misc 2d 322; Matter of Giddings, 198 Misc 536, supra; Matter of Levy, 171 Misc 431, supra.)
This testator clearly meant to vest the remainder in his daughter subject only to his widow’s income interest and to the expiration of the waiting period which ended with 1977. The general language of the disposition dividing the principal "equally per stirpes among all my issue, including Louise Mitchell Paine, my only child at present, and any other children which I may have in the future” read in the light of the rest of the will which makes detailed provisions to protect Louise during the trust term represents the testator’s attempt *401 to provide for the theoretical possibility that he might have other children. That his concern was focused on that generation of his heirs appears from the final phrases referring only to children. To implement testator’s evident intent, this language must be read as a gift of the remainder to his daughter Louise or to her issue per stirpes if she predeceased the trust term.
The conservator for testator’s cousin Elizabeth filed objections to the acceleration of the remainder as nullifying the trustee’s power to invade the trust principal up to 20% for her benefit, but his objections have been mooted by her death. The testator here obviously did not contemplate the possibility that the trust term might end before his cousin’s death (cf. Matter of Bleier, 20 Misc 2d 322, supra; Matter of Haley, supra) but the power to invade for his cousin’s benefit would not in this court’s view justify a refusal to accelerate the entire remainder. This power does not in this court’s view take primacy over testator’s intention to have the principal pass to his daughter when the trust terminated. The cousin’s death makes it unnecessary to consider further what effect the renunciation had upon her interest.
All parties agree that the obligation to make payments to testator’s first wife is a proper charge upon the trust principal. Presumably this can be satisfied in a practical manner perhaps ultimately by the purchase of an annuity. Subject then to the proper funding of this obligation, the balance of the trust principal is to be distributed to the testator’s daughter. Counsel for petitioner is requested to mail a copy of this decision to her Hawaii attorneys.