Seymour Lakritz, J.
Leatrice Lerner and Theodore R. Lerner are husband and wife. In unrelated proceedings prior to the proceedings now before the court, plaintiff, Leatrice Lerner, obtained a judgment against the said Theodore R. Lerner on February 4, 1976 in the sum of $8,530, which judgment while filed and docketed in the office of the Clerk of the County of Queens remains unpaid and unsatisfied except for the sum of $4.16, leaving a present balance due and owing of $8,525.84.
Said Leatrice Lerner instituted these proceedings, two in number, one against the Williamsburg Savings Bank request *686 ing a judgment against said bank for the sum due Leatrice Lerner. The gravamen of said action being that the bank has on deposit to the credit of the said Theodore R. Lerner funds placed in a "Keogh” plan account. Simultaneously therewith, she also began a proceeding against Bruton Corporation for judgment in a similar amount, the gravamen thereof being that the said corporation was indebted to said Lerner in an amount in excess of the outstanding judgment.
The said Theodore R. Lerner interposed papers requesting permission to permit himself to intervene personally in the Williamsburg Savings Bank proceeding, and simultaneously therewith cross-moved to dismiss said petition.
All these matters were set down for a hearing on June 8 of this year.
Upon consent of the petitioner in these proceedings, an order is hereby granted permitting Theodore R. Lerner personally and as a partner in the partnership of Dr. Lerner,. Symons, Schlagel, Newman, Sherman & Strober to intervene in this proceeding. Thereafter argument was heard and testimony taken with relationship to the applications of the petitioner herein.
The facts are as follows:
On or about November 13, 1975, by written agreement, the partnership hereinabove referred to entered into an agreement with the Williamsburg Savings Bank by virtue of which a profit sharing retirement plan for self-employed individuals was established. Pursuant thereto funds were contributed by said partnership and deposited with the bank. The bank has established in the name of each of the partners, accounts into which were placed such sums of money as each of the partners was entitled. With regard to the aforesaid Dr. Lerner his interest was established at the rate of 20% of the total deposit. Pursuant to some of the terms of the agreement it was agreed that all contributions made under the plan were to be invested exclusively in savings accounts in the respondent bank. It is conceded that the sum of money in the account of Dr. Lerner is in excess of the judgment heretofore obtained against him.
Paragraph 5 (d) of the plan further provides: "that in addition to any sum of money which the partnership may legally contribute out of profits that an owner-employee may contribute on behalf of himself an additional amount in cash, *687 not in excess of the amount that could be contributed for him for such year pursuant to subparagraph A of this paragraph 5 without giving effect to subparagraph C of this paragraph 5 provided, however, no such contribution of an additional amount of cash shall exceed the lesser of ten percent of such owner-employee’s earned income for such year or $2500.”
Paragraph 6 of this agreement further provides: ’’Payment of heneñts. All contributions made in behalf of each owner-employee [Dr. Lerner], together with all interest accumulated thereon, shall [emphasis supplied] be distributed to such owner-employee upon the termination of his employment by reason of retirement or otherwise, provided, however, that such termination of employment occurs not earlier than age 59 Vi and not later than age 70Vi. In the event of the death of any such owner-employee prior to such distribution, all such contributions and accumulated interest shall be distributed as soon after death as practicable * * * In the event that any such owner-employee shall become so disabled prior to such distribution as to be unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, all such contributions and accumulated interest made in his behalf shall be distributed to such owner-employee at the time he becomes so disabled.”
Paragraph 7 of this agreement further provides that distribution by the trustee shall be upon instructions in writing furnished to the trustee by the employer pursuant to paragraph 3 of the plan. This paragraph further goes on to state "that no distribution of the funds of the trust shall be made except in accordance with such instructions and no distribution of the trust may be made for any purpose other than the payment of benefits”.
As indicated previously it was conceded that in this fund earmarked for Dr. Lerner is a sum in excess of the amount of the judgment taken against him. The argument of counsel for the said Dr. Lerner and for the bank was essentially that attachment could not lie against these funds. That these were trust funds and/or retirement funds which were subject to the direction of the employer (the partnership) and therefore out of the control of the said partner. There was also argument offered that to permit an invasion of these funds prior to the time when the law permitted withdrawal would result in *688 extreme income tax penalties to the said Dr. Lerner and that same would be unfair to permit such penalties to be imposed.
With regard to the Bruton matter testimony was taken that Bruton was a corporation organized by Dr. Lerner and others and that Dr. Lerner owned one fifth of the shares. That the corporation was incorporated in January, 1967. Testimony further indicated that the nature of the monies against which the petitioner claims consists of a debt by the corporation to Dr. Lerner in the sum of some $16,500. That this debt actually was moneys loaned by the said Dr. Lerner to the respondent in 1974 and 1975. It was further testified that there was no date established for the repayment of these loans. The financial report was submitted into evidence dated September 30, 1975 which indicated that the total assets of this corporation consisting of cash, loans receivable, and office furniture, fixtures totaled $12,421.33. That against those assets were total liabilities including loans payable to various stockholders of $80,600 in a total of $82,000 odd dollars. It was further testified that the corporation suffered tremendous losses as a result of some land transactions in previous years.
The court can and will dispose of the matter dealing with Bruton very quickly. It is this court’s opinion that the petitioner has failed to show that there are moneys due and owing to Theodore R Lerner in the form which will comply with CPLR 5201. The court does not find that the evidence indicates that any moneys owed to Dr. Lerner are "due, certainly or upon demand” as required by the said CPLR 5201 (subd [a]). Accordingly this proceeding is dismissed.
With regard to the fund held in the Williamsburg Savings Bank the question which must be resolved is whether the fund held for the benefit of Dr. Lerner falls outside the exemption set forth in CPLR 5205 (subd [d]). That section holds that "Any property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.” The bank and intervenor argue that this fund is one which falls within the above described exemption because the partnership to which the intervenor belongs is the creator of the fund; and further that the disposition of the fund is subject to the orders of the partnership. Cited by the intervenor and the bank is the case of Fordyce v Fordyce (80 Misc 2d 909). The respondents further argue that it would *689 create a great hardship to withdraw these funds prematurely since there are severe penalties and tax consequences attached to the premature withdrawal of "Keogh” moneys. The last argument can be disposed of quickly. The fact that there may be severe financial hardships created by permitting a premature withdrawal of these funds may not serve as a method by which judgment creditors can be deprived of the right to attach such funds. The economics of a situation should not be a cause to defeat a person or prevent a person from exercising those rights which the law permits them to exercise.
Concerning the other arguments advanced, the court finds that in effect the funds now held by the bank for the benefit of Dr. Lerner are moneys which belong to Dr. Lerner. They come from profits of the partnership in which he holds a 20% interest, and pursuant to partnership law they belong to him. Because of the nature of the Federal statutes permitting the formation of retirement plans and in order to give to such entities retirement rights which are allowed to self-employed persons, the "Keogh” statute was enacted. All that the statute does is defer payment of taxes on profits of the partnership. The moneys, however, belong to the partners individually in proportion to their interest in those partnership profits — in this case 20%. Certainly if these were profits to be distributed and paid to Dr. Lerner they would be subject to attachment and the rights of creditors could not be defeated. To permit the creation of a trust fund into which these profits were paid, (attachable if distributed) to remain free from attachment would create a travesty upon justice.
This trust can be abrogated at any time that the beneficiary thereof — Dr. Lerner — desires. As previously indicated the tax consequences and penalties would be the result thereof but it would not prevent Dr. Lerner from withdrawing those funds. Schenck v Barnes (156 NY 316) states the policy of this State quite properly when on page 320: "The statute [Code of Civil Procedure, § 2463, the predecessor to CPLR 5205 subd (d)] is obviously designed to assist the creators of trusts in protecting and caring for the beneficiaries who are the natural objects of their solicitude and care, but it cannot be invoked by a debtor to protect the trust which he has created to serve in time of need as a refuge from his creditors.”
The case of Fordyce cited by the intervenor and the bank really offers no solace to them. In that case there were several *690 trusts created which were as the result of collective bargaining agreements between the employer and their employees wholly funded by required employer and employee contributions. Further there is another trust created in that case in which the employee could voluntarily contribute a sum up to a certain percentage of his salary. The court in that case was careful to distinguish that in that separate fund the beneficiary thereof, the judgment debtor, had no interest therein. The court went on to say: "Even in the case of a self-settled trust, creditors can only reach the interest the settlor retained for himself’ (p 913). This court has no argument with that rationale.
However that is not the situation in the instant case at bar. In this case the beneficiary has an interest in the principal. As a matter of fact as previously stated it belongs to him. He can take it when he chooses subject to the penalty provisions. It therefore falls within that area of property which is subject to attachment. These funds are therefore a debt which is "due, certainly or upon demand” at the present time and are available to petitioner. (Pafumi v Bowery Sav. Bank, NYLJ, March 9, 1976, p 5, col 3.)
The further argument that the funds are partnership assets, and the disposition thereof are subject to the further direction of the partnership is overcome by reference to subdivision 1 of section 54 of the Partnership Law which reads as follows: "On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon”.
Accordingly the petition against Williamsburg Savings Bank is herewith granted.