164 N.J. Super. 354 (1978)
396 A.2d 365
DOROTHY WARD, PLAINTIFF,
v.
JAMES N. WARD, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 12, 1978.
*356 Mr. William R. Schreiber for plaintiff (Messrs. Hoffman and Schreiber, attorneys).
Mr. Michael T. Warshaw for defendant (Messrs. Drazin and Warshaw, attorneys).
Mr. Arnold S. Cohen for garnishee respondent (Messrs. Pitney, Hardin & Kipp, attorneys).
YACCARINO, J.S.C.
The issue presented to the court by the facts of this case is one which has not been the subject *357 of a reported decision in the jurisdiction, but one which has far-reaching effects upon matrimonial actions. Simply stated, the issue is whether the United States Congress intended that the antialienation provisions of the Employee Retirement Income Security Act of 1974, P.L. 93-406, 88 Stat. 832, 29 U.S.C.A. § 1001 et seq. (ERISA), should protect a pensioner from a state court decree directing the trustees of his pension plan to pay over certain amounts of his pension to satisfy family support obligations.
The material facts may be stated as follows. By final judgment of the Chancery Division, Monmouth County, dated September 21, 1975, the marriage between plaintiff Dorothy Ward and defendant James Ward was dissolved. As part of that final judgment defendant was ordered to pay to plaintiff the sum of $150 a week for alimony and support, plus the costs and counsel fees incurred by plaintiff in the divorce proceedings. Defendant failed in his legal duty to support and maintain plaintiff, and on October 24, 1977 this court entered a judgment on arrears, counsel fees and costs. Defendant has failed to satisfy the judgment and the arrears have continued to accumulate since that time.
Defendant was an employee of the Western Electric Company and a member of the company's plan for employees' pensions, disability and death benefits. The Western Electric plan is administered by Citibank, N.A., through a trust agreement. On December 31, 1975 defendant retired from Western Electric and he is currently receiving monthly retirement benefits from that company's plan in the amount of $732.79. These monthly benefits are paid directly to defendant by Citibank, N.A., from the Western Electric Pension Trust Fund.
Plaintiff brings the motion pursuant to R. 1:10-5 against defendant James N. Ward, joining James E. Fanning, the benefit administrator of the Western Electric Plan and First National City Bank, the administrator of the plan. Plaintiff seeks an order pursuant to N.J.S.A. 2A:17-56.1 et seq. requiring the Western Electric Company and the *358 trustees of the pension plan to withhold defendant's monthly pension benefits and pay such benefits directly to plaintiff to be applied to the judgment for divorce, the judgment for arrearages, alimony and counsel fees.
The Secretaries of Labor and the Treasury have been charged by Congress with the coordinate responsibility for administering the provisions of ERISA, 29 U.S.C.A. § 1204. ERISA establishes a comprehensive program of federal regulation of private employee benefit plans, including requirements for disclosure, vesting, funding and fiduciary conduct.
This case involves primarily the construction of ERISA's anti-alienation provisions  P.L. 93-406, 88 Stat. 829, §§ 206(d) and 1021(c), 29 U.S.C.A. § 1056(d)(1) and 26 U.S.C.A. § 401(a)(13), which generally seek to protect an employee's pension benefits from any assignment alienation or attachment.[1]
*359 As the legislative history indicates, these provisions are designed to advance the important public policy of "ensure that the employee's accursed benefits are actually available for retirement purposes." H.R. Rep. No. 93-807, 93rd Cong.2d Sess. 68-69 (1974), U.S. Code Cong. & Admin. News 1974, pp. 4639, 4734.
A literal interpretation of 29 U.S.C.A. § 1056 would not preclude an involuntary diversion of pension benefits by the process of levy and execution. However, it is clear from the legislative history of this section that in addition to voluntary assignments, Congress also intended to prohibit certain involuntary transfers, such as those arising from debt-based garnishment proceedings.[2]
*360 The Western Electric Plan establishing the pension fund satisfies the ERISA requirement by providing in § 8.2:
Assignment or alienation of pensions or other benefits under these Regulations will not be permitted or recognized.
This provision in the pension plan, standing alone, would not preclude garnishment of the pension proceeds. The New Jersey courts allow the enforcement of support obligations against the defaulting spouse's pension benefits despite restrictions on garnishment or other involuntary alienations of those benefits contained in the pension documents. Fischer v. Fischer, 13 N.J. 162, 169 (1953); Thiel v. Thiel, 41 N.J. 446, 451 (1964).
It is the position of the trustee of the Western Electric Plan that the ERISA provisions preempt state action to garnish this benefit.
A state law which conflicts with a federal law is invalid under the Supremacy Clause of the United States Constitution. Jones v. Roth Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). When a state law and a federal law are inconsistent, the state law must yield where it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
However, preemption by federal legislation is not to be presumed. Penn Dairies v. Milk Control Comm'n of Pa., 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943). This fundamental principle of statutory construction is especially invoked when it is claimed that a federal regulation supersedes a state regulation of domestic relations. Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Ohio ex rel. Popovici v. Agler, 280 *361 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930). As stated by Mr. Justice Day in Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904):
[u]nless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and educate his children. [at 77, 25 S.Ct. at 176]
The courts have long recognized that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not of the United States." Ohio ex rel. Popovici v. Agler, supra 280 U.S. at 383, 50 S.Ct. at 155. Congress does not infringe sub silentio the power to make rules to establish, protect and strengthen family life which is committed by the United States Congress to the legislature of each state. Stone v. Stone, 450 F. Supp. 919, 924 (N.D. Cal. 1978).
There is nothing contained in the debates and reports on ERISA which suggests that the anti-alienation provisions were intended to include family support payments. Cartledge v. Miller, 457 F. Supp. 1146 (1978); Cody v. Riecker, 454 F. Supp. 22 (E.D.N.Y. 1978).
In interpreting this statute the court may be aided by prior judicial interpretations of related and similar statutes. Sanford's Estate v. Internal Revenue Comm'r, 308 U.S. 39, 42, 60 S.Ct. 51, 84 L.Ed. 20 (1939). A review of the federal statutes, including anti-assignment provisions similar to the one appearing in ERISA, demonstrates that these sections exempt support payments. For example, the anti-alienation provisions of the Veterans' Benefits Act, 38 U.S.C.A. § 3101(a), and the Bankruptcy Act's provision for discharge of prior obligations exempt support obligations. In re Marriage of Hisquierdo, 19 Cal.3d 613, 139 Cal. Rptr. 590, 566 P.2d 224 (Sup. Ct. 1977), cert. granted 434 U.S. 963, 98 S.Ct. 500, 54 L.Ed. 2d 448 (1978); Wetmore v. Markoe, supra. Similarly, anti-alienation provisions in the Railroad *362 Retirement Act, 45 U.S.C.A. § 231m, and the Social Security Act, 42 U.S.C.A. § 407, have been held inapplicable to family support obligations. Hannah v. Hannah, 191 Ga. 134, 11 S.E. 2d 779 (Sup. Ct. 1940); Brown v. Brown, 32 Ohio App.2d 139, 288 N.E.2d 852 (App. Ct. 1972).
In Schlaefer v. Schlaefer, 71 U.S. App. D.C. 350, 112 F. 2d 177 (D.C. Cir.1940), Judge (later Justice) Rutledge considered whether a disabled person receiving benefits under the Life Insurance Act for the District of Columbia was relieved of his support obligations by the anti-garnishment provisions of that act. In refusing to apply the anti-garnishment provision to support payments, Justice Rutledge stated that
An important, often the primary motivation for taking out disability insurance is protection of the family, not merely of its supporter. * * * Furthermore, the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief. [at 185]
Upon careful review of ERISA and the purposes and public policies it was enacted to safeguard, it is clear that the Congress never intended the anti-alienation provisions of the act to exempt benefits from attachment or garnishment to enforce decrees of support. See Cody v. Riecker, Cartledge v. Miller and Stone v. Stone, all supra.
The first paragraph of ERISA expressly states that the Congress intended the act to protect not only the employee-pensioner but also the well-being and security of "these dependents." 29 U.S.C.A. § 1001(a). It is inconceivable that the Congress intended to apply the anti-alienation provisions in private pension plans to support garnishments and levies when similar provisions in federal pension plans, such as Social Security and Veterans Benefits, do not apply *363 to such proceedings.[3] There is a "duty of higher obligation" owed by a man or woman to the family. Schlaefer v. Schlaefer, supra at 186.
The remaining question to be decided is what percentage of defendant's pension proceeds is subject to garnishment for support payments. Under the Consumer Credit Protection Act, 15 U.S.C.A. § 1601 et seq., the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed 55% of such individual's disposable earnings for that week, where the individual is supporting his present spouse or a dependent child and the garnishment is to enforce a support order with respect to a period prior to the 12-week period which ends with the beginning of the workweek subject to garnishment. 15 U.S.C.A. § 1673(b)(2). Congress has expressly stated that no court may make, execute or enforce any order or process in violation of this section. 15 U.S.C.A. § 1673(c).
It is clear that the term "earnings" as used in this statute includes pension benefits. 15 U.S.C.A. § 1672(a).
Plaintiff has filed an affidavit in support of this motion in which she states that defendant earns substantial income from marinas which he owns or operates in the States of New York and Florida.
As stated earlier, the 55% maximum subject to garnishment under 15 U.S.C.A. § 1673b(2) refers to aggregate disposable income.
Plaintiff fails, however, to set forth with any specificity the location of defendant's employment and the amount earned. Defendant filed what appears to be a denial. Considering the allegations and denial, the court is unable to determine what defendant does earn over and above his pension. Since it is *364 unlikely that defendant will come before this court for a plenary hearing on the issue, he shall have 30 days within which to submit verified copies of his 1976 and 1977 federal income tax returns, together with a complete statement of earnings. In the interim, the court will assume that his only income is his pension. If defendant fails to comply with this order, the court will assume that his earnings are as plaintiff contends, thereby exposing his entire monthly pension payment to be used to pay the accumulated arrearages on his obligation to pay plaintiff alimony and support.
Plaintiff is to submit a detailed statement as to the amount of arrearages due.
NOTES
[1] The anti-alienation clause of ERISA was enacted in two places in the statute in slightly different forms, once as part of subtitle B of Title I, "Regulatory Provisions," 29 U.S.C.A. § 1056(d):

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued non-forfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on prohibited transactions) by reason of section 4975 (d)(1) of Title 26.
This clause was also enacted as an amendment to the provisions of the Internal Revenue Code of 1954 dealing with qualified plans, 26 U.S.C.A. § 401(a)(13):
A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1). This paragraph shall take effect on January 1, 1976 and shall not apply to assignments which were irrevocable on September 2, 1974.
Contemporaneous with the enactment of § 401(a)(13) of the Code, the Treasury Department promulgated Treas. Reg. § 1.401(a)-13, 43 C.F.R. 2943-44 (1978), which amplifies the provisions of this section. It provides in pertinent part:
(b) No assignment or alienation.
(1) General Rule. Under Section 401(a)(13) a trust will not be qualified unless the plan of which the trust is a part provides that benefits may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, levy, execution or other legal or equitable process.
[2] H. Conf. Rep. No. 93-1280, 93rd Cong., 2d Sess., 280 U.S. Code Cong. & Admin. News 1974, p. 5061 (1974-3 Cum. Bull. 415, 441):

For purposes of this rule a garnishment or levy is not to be considered a voluntary assignment.
Accord: Cody v. Riecker, 454 F. Supp. 22 (E.D.N.Y. 1978); contra: National Bank, etc., v. International Broth, etc., 400 N.Y.S.2d 482, 486-487 (Sup. Ct. 1977) (the anti-alienation provisions do not preclude garnishment by a judgment creditor).
[3] See 42 U.S.C.A. § 659(a), which provides that spouses and children can proceed against government pension plans to enforce the legal obligations of government employees "to provide child support or make alimony payments."