179 N.J. Super. 556 (1981)
432 A.2d 950
RANDI SUSAN MALLORY, PLAINTIFF,
v.
LOUIS PATRICK MALLORY, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided May 14, 1981.
*557 Blackman and Effron for plaintiff.
R.M. James Ruscick for defendant.
KRAFTE, J.J.D.R.C., (temporarily assigned).
Plaintiff seeks by way of motion pursuant to N.J.S.A. 2A:17-63 to require the United Jersey Bank to turn over to the Bergen County Sheriff the sum of $5,884.51 which it is holding in an Individual Retirement Account[1] (hereinafter referred to as an IRA account) in the name of defendant. This relief is sought pursuant to a writ of execution. The issue this court is faced with is the ability of a spouse to levy upon the corpus (as opposed to the beneficial payments) of an IRA pension fund created pursuant to 26 U.S.C.A. § 408, to satisfy a judgment for alimony and child support arrears. Research reveals no reported case in any jurisdiction which precisely addresses this issue.
A judgment for $5,375 was entered against defendant in the Chancery Division on December 11, 1979 for arrearages in alimony and child support payments due plaintiff. On January 28, 1980 an abstract of judgment was recorded in the Superior *558 Court Clerk's Office pursuant to N.J.S.A. 2A:16-18 et seq. At the time of the current application no portion of the judgment has been satisfied.
Pursuant to the writ of execution issued by this court on September 29, 1980, the Bergen County Sheriff levied upon defendant's IRA account at the United Jersey Bank's Hackensack Branch in the amount of $5,884.51, which includes the amount of the judgment plus interest and costs.
It is defendant's position that to allow plaintiff to execute upon the corpus of defendant's IRA account to satisfy a judgment based on alimony and child support arrearages is in contravention of federal law. He concedes that there is an exception whereby one may levy upon the benefits flowing from said pension fund to satisfy a judgment of this nature. Western Electric v. Traphagen, 166 N.J. Super. 418 (App.Div. 1979); Ward v. Ward, 164 N.J. Super. 354 (Ch.Div. 1978), and Biles v. Biles, 163 N.J. Super. 49 (Ch.Div. 1978). However, he objects to an extension of this exception with respect to attaching the corpus of pensions created pursuant to federal statute. Defendant contends that to allow plaintiff to execute against his IRA corpus would do "major damage" to the "clear and substantial federal interests" that allow every individual the right to establish a pension fund.
It is most important that this court examine the purpose for which the IRA statute was enacted. Initially it provides employees who are not covered at their place of employment by any other type of retirement account with the opportunity to establish such an account. A second objective is that it defers payment of taxes on higher incomes earned during early, more productive years to a later period which will, presumably, find the taxpayer retired and in a lower tax bracket. At such time as the taxpayer qualifies and elects to receive distribution from his account, the expected benefit derived will be the payment of taxes at a lower rate on the sums so received.
*559 The Congress, in establishing the IRA accounts as part of the comprehensive Employee Retirement Income Security Act (hereinafter ERISA), provided that there was to be no alienation or assignment of benefits, 29 U.S.C.A. § 1056(d)(1).[2] Federal and state courts alike have confronted this problem with respect to benefits. The United States Court of Appeals for the Second Circuit, held in Cody v. Riecker, 594 F.2d 314 (1979), that enforcement of family support orders may be by garnishment of benefits regulated by ERISA.
The court in Cartledge v. Miller, 457 F. Supp. 1146 (S.D.N.Y. 1978), quoted Judge (later Justice), Rutledge's comments in Schlaefer v. Schlaefer, 71 U.S.App.D.C. 350, 112 F.2d 177 (D.C. Cir.1940), in interpreting the exemption clauses in light of Congressional intent, as follows:
The usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security short of public relief. [Id. at 358, 112 F.2d at 185; emphasis supplied]
Judge Weinfeld, speaking for the Cartledge court, continued:
"Rather than intending to undermine the family law rights of dependent spouses and children, the legislature was concerned that employees and their beneficiaries  the entire family  be protected by ERISA."[53]
"Thus the conclusion is warranted that, like the previous congressional exemptions, ERISA's anti-assignment or alienation sections were included only "to protect a person and those dependent upon him from the claims of creditors"[54] not to insulate a breadwinner from the valid support claims of spouse and offspring[55]." [457 F. Supp. at 1156; emphasis supplied][3]
*560 The court while implying an exception to ERISA, pointed out to other Federal Acts where execution and/or attachment were forbidden such as the Social Security Act, Railway Retirement Act, Veterans Benefits Act and the Bankruptcy Act, all of which either specifically allow for attachment for family support obligations or have had it implied by the courts.
Judge Weinfeld summarizes:
Indeed, an overall congressional purpose not to interfere with the State's power to enforce family support obligations may be gleaned from judicial interpretation of exemption provisions in other federal statutes. Though not exactly in pari passu, they indicate a general congressional intent not to preclude enforcement of family support obligations. Id. at 1155.
The court concluded that it would be absurd to import a contrary intent to ERISA provisions when the purpose of the exemption provisions is to protect the pension fund from claims adverse to the employee and his dependents.[4]
The case of American Tel. and Tel. Co. v. Merry, 592 F.2d 118 (2nd Cir.1979), also carved out an implied exception in furtherance of Congress' concern in the ERISA legislation for the well being of employees and their dependents, as follows:
We reject appellants' proffered statutory construction and believe the more reasonable interpretation to be that a garnishment order used to satisfy court ordered family support payments is impliedly excepted from preempted state law relating "to any employee benefits plan...." [at 121]
With this examination of the congressional purpose of the ERISA statute by our federal courts, we now proceed to an analysis of the question this court is faced with herein: whether a former spouse can execute upon the corpus of an IRA (as earlier mentioned, part of the ERISA legislation) to satisfy her *561 judgment based on alimony and child support arrearages. As has been noted, none of the cases heretofore cited refers to an execution upon the corpus of any pension account, but rather only upon the benefits that flow therefrom.
The most nearly analagous case to the issue raised herein is found in Sheehan v. Sheehan, 90 Misc.2d 673, 395 N.Y.S.2d 596 (1977), a New York decision which dealt with a Keogh Plan.[5] That court was faced with a similar problem where a former wife moved to compel the bank, as trustee of certain funds of defendant husband, to turn them over to the sheriff to satisfy plaintiff's judgment for alimony and child support arrearages. Under the New York statutes the wife achieved the status of a judgment creditor. The court equated the Keogh Plan to a "self-settled trust," that is, the funds in the Keogh account were voluntarily paid over by a depositor for his own benefit, revocable at will, no other person having any interest in such funds. Therefore, the court ruled that such funds were not insulated from a judgment creditor. The fact that the particular judgment was for family support, however, did not seem to be a factor in the court's decision. Sheehan appears to stand for the proposition that any individual elevated to the status of judgment creditor may satisfy his claim out of the corpus of the funds in a Keogh Plan. As such, Sheehan appears to be at odds with the above federal decisions and appears to be in direct conflict with the clear anti-alienation provisions of the federal acts. This court cannot accept such an expansive doctrine. See, also, Lerner v. Williamsburg Savings Bank, 87 Misc.2d 685, 386 N.Y.S.2d 906 (1976). In the instant matter we are confining ourselves to the narrow question as to whether we may permit attachment of the corpus of an IRA account to satisfy a judgment *562 for alimony and child support. Numerous circumstances and considerations compel this court to answer that question unhesitatingly in the affirmative.
The court is cognizant of the factors surrounding the establishment, maintenance and control of an IRA account as being for the settlor's benefit. The corpus, for all intents and purposes, is totally within the control of the settlor, i.e. he may withdraw the deposits at any time in his absolute discretion. Such premature withdrawal (prior to age 59 1/2) is subject only to the payment of income tax at the time withdrawals are made together with any interest penalties as provided by law. To hold the corpus to be unattachable would result in this court sanctioning a self-created, totally controllable vehicle for the contrived avoidance of family support responsibility.
The argument has been advanced that to require a turnover of these funds would create severe adverse tax impact consequences for defendant. The fact that there may be such financial hardships created by permitting a premature withdrawal of these funds should not serve as a method by which individuals may intentionally avoid their most basic obligation  the support of their family. Such hardship cannot be equitably equated with the untold hardships faced by dependents who would remain otherwise unsupported. See Lerner v. Williamsburg, 87 Misc.2d 685, 386 N.Y.S.2d 906 (1976). It is inconceivable for this court to believe that Congress ever intended such a result, especially in light of the foregoing conclusions regarding Congressional intent. To accept such an argument Congress would in effect be subordinating a family's right to support from its lifelong breadwinner to the breadwinner's achieving favorable tax results. To protect the participants and their beneficiaries from the adverse claims of creditors was clearly one of Congress' stated intents. ERISA § 2(c), 29 U.S.C.A. § 1001(c). Again, to reject plaintiff's application would result in this court sanctioning a subterfuge whereby individuals would be able to avoid their primary responsibility to the extent of their IRA contribution. It would be propitious to point out at this juncture that *563 defendant's tax impact would be greatly minimized to the extent that the judgment is for alimony payments. That portion, of course, would be tax deductible.
Another argument which has been advanced by the trustee banks where benefits have been held garnishable is that of unanticipated increased administration costs. Our federal courts rejected this claim in American Tel. & Tel. Co. v. Merry, 592 F.2d 118 (2nd Cir.1979), where the court stated:
... In our view, any increased administration costs must be regarded as a slight consideration when balanced against the heavy burden that will be imposed on the public treasury if dependent spouses and children cannot enforce support rights and must instead resort to welfare assistance. [at 125]
This suggests yet another problem which this court may indirectly create were it to hold that the corpus was not subject to execution  by providing a very effective vehicle whereby an individual may escape his support obligations and thereby transfer the obligation and responsibility for those individuals to the welfare facilities of the State. This would necessarily follow, at least until such time as defendant reaches 59 1/2 when it would be possible to garnish benefits. In the instant case defendant's IRA is the only known asset available in this State, making the spectre of welfare a real probability. If this self-created retirement trust corpus were held to be nonattachable, then defendant has effectively transferred his obligation of supporting his family to the State. Such a result is inequitable, unjust and will not be tolerated.
It is also important to observe that nowhere does the statute directly proscribe such execution against the corpus. Defendant argues that such execution would in fact fall under the Supremacy Clause of the U.S. Constitution. However, as our sister court in Biles v. Biles, 163 N.J. Super. 49 (Ch.Div. 1978), aptly pointed out, a conflict between New Jersey law permitting enforcement of support arrearages and the restrictions imposed by ERISA against alienation and assignment of benefits, would be created, rendering the state law invalid under the Supremacy Clause only if the state law presented an obstacle to the accomplishment and execution of the objectives of federal legislation.
*564 Under the circumstances surrounding the creating and continuance of an IRA account, this is clearly not the case. As heretofore noted, the Congressional objective is to protect not only the individual but also his family. It would be inimical if an exemption clause designed to protect the dependents of an employee and enable him to meet his obligations after retirement was interpreted to permit him to avoid such obligations with immunity and impunity after divorce and prior to retirement. Stone v. Stone, 450 F. Supp. 919 (N.D.Cal. 1978), aff'd 632 F.2d 740 (9th Cir.1980). Attachment of the IRA corpus is fully cognizable within the stated Congressional intent in the establishment of ERISA.
The IRA statute itself also contains a provision to deal with the transfer of an account incident to a judgment of divorce  26 U.S.C.A. § 408(d)(6). That section provides:
The transfer of an individual's interest in an individual retirement account, individual retirement annuity, or retirement bond to his former spouse under a divorce decree or under a written instrument incident to such divorce is not to be considered a taxable transfer made by such individual notwithstanding any other provision of this Subtitle, and such interest at the time of the transfer is to be treated as an individual retirement account of such spouse, and not of such individual. Thereafter such account, annuity or bond for purposes of this Subtitle is to be treated as maintained for the benefit of such spouse.
The above is further supportive of the rational conclusion that familial obligations are treated separately, distinctly and with special consideration, which cannot be equated with general commercial considerations.
The IRA can also be distinguished from most other ERISA pension plans in one further respect. The only funds present in the IRA plan are those of the settlor. The fact that the corpus may be required to be turned over will not affect the funds of strangers but only those of the individual covered by the plan. Other plans may produce a situation where the individual's funds are commingled with those of other participants, such as in an employer-created pension plan established pursuant to ERISA. It is therefore predictable that an uncontrolled withdrawal of one unit may dramatically affect the other interests *565 and investments, particularly where the plan covers a minimal number of participants. However, with respect to IRA accounts, only those funds of the settlor are involved, which are nevertheless subject to his discretionary withdrawal. The solvency of the beneficial interests of other participants and return on investment is in no way hampered in an IRA as in other pension plans. No one but the settlor is affected, for other interests are nonexistent.
Based upon the foregoing, this court finds that the general ERISA enactments, and the IRA enactment in particular, were not intended to be vehicles for the avoidance of familial support obligations of a settlor. This court further finds that there are no federal prohibitions against alienation of the corpus of the IRA accounts for satisfaction of familial support obligations, whether by statute or case decision. This court finds that equity demands that IRA's be fully accountable, whether by corpus or benefit distribution, by way of legal process, for the satisfaction of familial support obligations.
This court, therefore, directs the United Jersey Bank, which has been given notice of this application but which has not appeared, to turn over the funds in defendant's IRA account to satisfy plaintiff's judgment for alimony and child support.
NOTES
[1] 26 U.S.C.A. § 408(a): "... the term `Individual Retirement Account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries...."
[2] 29 U.S.C.A. § 1056(d)(1): "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."
[3] For the purposes of this opinion it is not necessary to provide the reader here with footnotes 54-55 cited in Cartledge. It is, however, appropriate to provide footnote 53. ERISA § 2(c), 29 U.S.C.A. § 1001(c) (emphasis supplied):

It is hereby further declared to be the policy of this Act, to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans. See also ERISA § 2(b), 29 U.S.C. § 1002(8), defines "beneficiary" more narrowly, I take the term in its broader sense when it is used in the preamble, which was a general statement of the goals of the statute, not a technical recitation.
[4] It is important to note, as the court in Cartledge did, that the U.S. Department of Justice submitted a brief setting forth its view that "family support decrees were not intended to be within the scope of the anti-alienation provisions of ERISA (brief for the United States, Amicus Curiae, at 10.)
[5] A Keogh Plan is designed for self-employed individuals and allows contributions of 15% of earnings with a maximum of $7,500 deductible, whereas an IRA account is for those employed individuals who are not covered at work by any other type of retirement account. The IRA individual is allowed to deposit as much as 15% of gross annual income up to $1,500 a year (whichever is less).