OPINION OF THE COURT
Irving Kirschenbaum, J.
In conjunction with this application for judicial settlement of its account as trustee of the subject trust covering the period commencing June 14, 1928 and ending April 30, 1983, petitioner seeks a determination by this court as to whether a certain testamentary power of appointment conferred by the instrument creating said trust upon the daughter of the grantors has been validly exercised by her last will and testament.
*640 The trust was created on June 14, 1928 by the grantors’ execution of a trust indenture transferring to petitioner’s corporate predecessor certain securities described in a schedule annexed thereto. Although the grantors were then residents of the State of Connecticut, both petitioner and its predecessor have, at all relevant times, been New York corporations having their principal offices in the City of New York.
A preliminary question which must first be resolved before the determination sought by petitioner herein can properly be made is the question of the appropriate law to be applied in reaching such determination. The relevant statutory provisions (EPTL 3-5.1 [g] [2] [B]), which are a codification of prior law (see, Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-5.1, pp 609-610), state, in pertinent part, that the:
"intrinsic validity * * * of a testamentary disposition by which a power of appointment over personal property is exercised * * * [is] determined by * * *
"(2) In the case of a general power of appointment exercisable by will alone or a special power of appointment * * *
"(B) If such power was created by inter vivos disposition, the law of the jurisdiction which the donor of the power intended to govern such disposition.”
Although the subject trust indenture conferred upon the grantors’ daughter a general power to appoint the trust principal, exercisable by will alone, in an apparent endeavor to avoid inclusion of such assets in her gross taxable estate for Federal estate tax purposes, such power was thereafter partially released by said donee by an instrument executed in this State on October 27, 1951 and delivered to petitioner at its offices here. The effect of such partial release was to limit the permissible appointees under her testamentary power to her husband and to the members of classes described in said release as her "children” and her "lineal descendants”, thus transforming such power from a general to a special testamentary power of appointment (see, EPTL 10-3.2 [a] [1]; [b], [c]; 10-3.3 [a], [c]).
Since the primary question raised by petitioner clearly relates to the "intrinsic validity” of the exercise by the grantors’ daughter of her aforementioned special testamentary power of appointment, it must be concluded, based upon the above-quoted provisions of EPTL 3-5.1 (g) (2) (B), that the law to be applied in determining such question is the law of that *641 jurisdiction which the donors of such power (i.e., the grantors of the subject trust) intended to govern all questions relating to the intrinsic validity of their own inter vivos trust disposition. Unfortunately, however, the terms of their trust indenture contain no express indication of their intent in the latter regard and, in such circumstance, the applicable law is said to be the law of the jurisdiction having the most significant contacts with the trust (Matter of McCampbell, 36 Misc 2d 108). As heretofore indicated, the grantors were residents of Connecticut at the time they created their trust. Their daughter, the sole income beneficiary, was, at least for some period of time, including the time she executed the partial release of her power of appointment, a resident of this State, although at the time of her death she appears to have been a domiciliary of the State of Connecticut. Most significantly, however, as heretofore noted, at the time the subject trust was created, the assets comprising its corpus were transferred to a corporate trustee domiciled in this State; the signatures of all parties to the trust indenture were acknowledged here; and, since the trust’s inception, its assets have been continuously located and administered here by a trust company domiciled here. In addition, the only express reference contained in the indenture to the law of any particular State is the provision in article 6 thereof allowing the trustee to receive as its compensation "the Commissions on principal and income allowed by the laws of the State of New York to testamentary trustees.” Based upon this court’s review of the most relevant authorities, it must be concluded that the aforementioned contacts of the trust with this jurisdiction are more significant than, and substantially outweigh, its contacts with the State of Connecticut and that, in consequence, questions as to its intrinsic validity (as well as the intrinsic validity of the exercise by the donee — beneficiary of her testamentary power of appointment) should properly be determined by the laws of this State (see, Hutchison v Ross, 262 NY 381, 394-395; Chase Natl. Bank v Frazier, 243 App Div 623, affd 269 NY 541; Matter of McCampbell, supra; Matter of Devine, 34 Misc 2d 817; In re Jarvie’s Trust, 73 NYS2d 246; Shipman v Title Guar. & Trust Co., 20 NYS2d 508; Land, Trusts in the Conflict of Laws § 21.1).
No genuine issue exists here as to whether the grantors’ daughter effectively exercised her testamentary power. In article fifíh of her will (which has been admitted to probate in the State of Connecticut) she made express reference to the *642 power granted her by the subject indenture (as well as to the instrument partially releasing same) and expressly indicated that she was exercising such power by appointing the principal of the subject trust in accordance with the provisions of article eleventh of said will.
By the last-mentioned testamentary provisions, the grantors’ daughter directed, in substance and effect, that the principal of the subject trust be divided into three equal shares, one such share to be held in further separate trust for the benefit of her daughter, Barbara, another to be similarly held in trust for the benefit of her daughter, Joyce, and the remaining share to be divided into sufficient parts so as to provide one equal part for each child of her predeceased daughter, Margaret, who should survive her (i.e., the donee-testatrix); each such part to be held in further trust for the benefit of the surviving child of Margaret for whom it was thus set apart. Each such daughter-beneficiary and grandchild-beneficiary is to receive the income from his or her share for his or her lifetime and has been granted a testamentary power to appoint the principal thereof to any persons other than himself (or herself), his (or her) estate, his (or her) creditors, or the creditors of his (or her) estate. To the extent that any such power is not effectively exercised, the appointive property js to be distributed outright to the issue of the beneficiary so failing to exercise it or, in default of such issue, to the issue of the grantors’ daughter, subject to the proviso that any property which would thus pass to a member of the latter class who is then a recipient of income of any other trust established by article eleventh should be added to the principal of such other trust. In addition, the trustees of each of said trusts (other than one who is also a beneficiary thereof) have been granted the power, in their sole discretion, to pay or apply any part (or the whole) of the principal thereof to or for the benefit of the beneficiary thereof.
Finally, paragraph (f) of article eleventh limits the maximum duration of any trust created by said article for the benefit of any issue of the testatrix not in being at the time of her death to a period of "twenty-one years following the death of the survivor of her issue in being at the time of her death.”
The trust created by the subject indenture was limited in its duration to the lifetime of the grantors’ daughter. However, in addition to granting said daughter the aforementioned general testamentary power to appoint the principal remaining in said trust at the time of her death (in default of the exercise of *643 which, such principal was to pass outright to said daughter’s surviving children or, in default thereof, to her next of kin), article 3 thereof also granted her an unqualified power to withdraw, by "duly acknowledged instrument” executed by her and delivered to the trustee, "any part or all” of the principal of her trust, and, thus, to terminate same in whole or in part.
As the provisions of the subject indenture indicate no intent on the part of the grantors to restrict the authority of their daughter, under her general testamentary power, to appointments of absolute interests, there can be no doubt that, notwithstanding her partial release of such power to the extent heretofore indicated, she nevertheless retained authority to dispose of the appointive property in further trust (see, Matter of Hodsdon, 31 Misc 2d 93; Matter of Nicholas, 284 App Div 971; Matter of Sheedy, 20 Misc 2d 900; Matter of Finucane, 199 Misc 1069; Matter of Comey, 173 Misc 377; In re Hopkins’ Estate, 72 NYS2d 702; Matter of Finucane, 193 Misc 439).
The more troublesome question raised, however, is whether the appointments in further trust made by articles fifth and eleventh of the last will of the grantors’ daughter contravene our rule against perpetuities. It seems clear that, were it not for the aforementioned provisions of article 3 of the indenture, such exercise of her special testamentary power would have to be declared invalid. Since such power was exercised upon her death in February 1981, the applicable permissible period of the rule is the common-law period codified in our current statute (EPTL 9-1.1), in effect at such time: i.e., "lives in being at the creation of the estate”, plus "a term of not more than twenty-one years”, rather than the former "two lives in being plus a minority” period in effect when such power was created (EPTL 10-8.2; see, Matter of Reynal, 58 Misc 2d 518; Matter of McMurtry, 35 Misc 2d 560). However, by virtue of the provisions of EPTL 10-8.1 (a) (2), such permissible period would have to be computed from the time of the creation of the power and, since, at that time, the measuring lives of the further trusts created by the will of the grantors’ daughter were not in being, such dispositions would clearly be in violation of the rule (see, Matter of Grunebaum, 122 Misc 2d 645; Matter of McMurtry, supra; Matter of Fowler, 31 Misc 2d 62). Moreover, although EPTL 10-8.1 (b) explicitly recognizes an exception to the rule embodied in paragraph (2) of subdivision (a) in a case where the grantors have reserved to them *644 selves an unqualified power to revoke the trust (measuring the permissible period of the perpetuities rule, in such case, from the time when such power of revocation terminates), the grantors here made no such reservation.
It must be borne in mind, however, that EPTL article 10 was not intended to be a complete codification of the laws applicable to powers (see, EPTL 10-1.1; Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, 1984-1985 Pocket Part, EPTL 10-1.1, pp 231-232; Third Report of Temporary Commission on the Modernization, Revision and Simplification of the Law of Estates, 1964 NY Legis Doc No. 19, at 614), nor was EPTL 10-8.1 designed to supply more than the basic perpetuity principles governing interests created via the exercise of a power of appointment (see, 9B Rohan, NY Civ Prac ¶ 10-8.1 [3] [a]). Accordingly, where the provisions of said article do not cover or deal with a particular factual situation involving application of the rule against perpetuities to the exercise of a power of appointment, resort may be had to the usual common-law sources (Practice Commentary to EPTL 10-1.1 op. cit). One such source, the Restatement, takes the position that where a trust beneficiary is granted a special or limited power to appoint by will and, in addition (as here), an unqualified lifetime power to withdraw, for his own use, any part or all of the trust principal, the period of the rule with respect to nonvested interests which may be created by his exercise of the testamentary power does not begin to run until the termination of his unqualified power of withdrawal (see, Restatement [Second] of Property, Donative Transfers, § 1.2 comment d, illustration 10). Thus, for example, even though (as appears to have been the case here) such beneficiary may make little use of his lifetime power of withdrawal, but exercises his testamentary power by appointing the trust property remaining at his death to further trusts containing nonvested future interests, the period of the rule with respect to such interests does not begin to run until the date of such beneficiary’s death. The rationale for this exception to the usual "relation-back” doctrine (i.e., the doctrine requiring the period of the rule to be measured from the effective date of the instrument creating the power) appears to be that, for perpetuities purposes, the beneficiary’s unqualified power to withdraw the trust principal is the substantial equivalent of either: (1) a general power of appointment, presently exercisable, enabling the donee to appoint to himself and then, as owner, to dispose of the property as he sees fit, or of (2) a *645 reservation by the creator of a living trust of an unqualified power to revoke same. As noted by one learned commentator: "In these situations, and in any other similar ones in which some one person has an unrestricted power to wipe the slate clean, the time from which the permissible period applies is the time subsequent to the delivery of the deed, or subsequent to the death of the testator, at which the power to wipe the slate clean disappears from the operative facts” (9B Rohan, NY Civ Prac ¶ 9-1.1 [5] [a] [iii]). So long as such power exists, there is obviously no suspension (or even undue fettering) of the absolute power of alienation; nor can that aspect of the rule against perpetuities dealing with remoteness of vesting be in any way offended, since any nonvested future interest subject to such power "remains completely destructible at the uncontrolled will of a single person” (9B Rohan, NY Civ Prac ¶ 9-1.1 [7] [a] [iv] Restatement [Second] of Property, Donative Transfers, § 1.2 comment d, illustration 10).
It might, perhaps, be argued that the settlors’ grant to their daughter of such unqualified power to withdraw principal and thereby terminate the trust should be regarded as invalid and unenforceable as sanctioning, by indirection, a violation of the so-called "spendthrift” provisions of Personal Property Law former § 15 (as such provisions read at the time of the trust’s creation). By virtue of such statutory provisions, an income beneficiary of any trust to receive the income of personal property and pay or apply it to the use of any person has (until a 1973 amendment to their successor provisions, now set forth in EPTL 7-1.5), notwithstanding express permission therefor by the creator in the instrument declaring such trust, been absolutely precluded from irrevocably transferring or alienating his right to future income therefrom. In consequence, such trusts have been held to be virtually indestructible (see, Matter of Wentworth, 230 NY 176; Matter of Bowers, 2 Misc 2d 482; Matter of Knauss, 204 Misc 207; Matter of Wade, 270 App Div 712, affd 296 NY 244; Cook v City Bank Farmers Trust Co., 3 AD2d 634). It has been authoritatively determined, however, despite such spendthrift provisions and the so-called "indestructibility” doctrine just referred to, that the creator of a spendthrift trust may nevertheless validly .grant to an income beneficiary thereof an unqualified power to call upon the trustee to pay over to him any part, or even the whole, of the trust principal, and thereby effect either a pro tanto or complete termination (or indirect destruction) of such trust (see, Matter of Woollard, 295 NY 390; In re Gillies’ Will, *646 69 NYS2d 803, 804; see also, Matter of Morse, 198 Misc 364, 368; Matter of McMurtry, 68 Misc 2d 553, 558-559, supra; Matter of Warfield, 90 Misc 2d 899, 902-903). Accordingly, it must be concluded that the provisions of article 3 of the indenture were valid and enforceable during the lifetime of the grantors’ daughter.
Based upon all of the foregoing considerations, then, and particularly the provisions of article 3 of the subject indenture, it must be concluded that no violation of the applicable rule against perpetuities has occurred by reason of the appointments in further trust which have been made by the will of the grantors’ daughter.
One further point, not adverted to by any of the parties herein, also requires consideration. As is evident from facts hereinbefore noted, in exercising her special power, the grantors’ daughter has, in addition to creating equitable life interests in permissible appointees thereunder, also created in said appointees new special testamentary powers to appoint the trust property among persons who are not permissible objects of her original power as partially released. It has been held, however, that the donee of a special power cannot create in a permissible appointee under his power a new special power to appoint among persons who include individuals who were not proper objects of the original power (McLean v McLean, 174 App Div 152, affd without opn 223 NY 695). Such holding, however, has been criticized as unsound by at least two learned commentators. "Since by established law the donee of the original [special or nongeneral] power could properly confer upon a permissible appointee either complete ownership or a general power to appoint, there is no rational basis for refusing to permit the creation in such appointee of any kind of non-general power desired by the original donee” (3 Powell, Real Property ¶ 398; 9B Rohan, NY Civ Prac ¶ 10-6.2 [2] [b]). This court is in substantial accord with such criticism of the aforementioned determination in McLean (supra) and, accordingly, finds that the principle there enunciated should not be extended beyond the precise factual situation there presented. It is concluded, therefore, that such principle has no application in a case where, as here, the original power conferred by the donor was general, and was transformed into a limited or special power solely by reason of voluntary action on the part of the donee in partially releasing same.
Based upon all of the foregoing considerations, it is concluded that the will in question constitutes a valid and fully *647 effective exercise by the grantors’ daughter of her power to appoint the principal of the subject trust.
There being no objections to the account, same is settled and allowed as filed.