**In re August C. HOHL and Karen D.J. Hohl, Debtors.**

**Bankruptcy No. 85 B 21114.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Nov. 23, 1987.

Ralph E. Elliott, Freeport, Ill., for petitioner.

David L. Jeffrey, Freeport, Ill., for respondent.

### MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER,
Bankruptcy Judge.

This matter comes before the Court on the Objection of Bowen Oil Company (Bowen) to Exemptions and Request for Turnover Order. The Debtors are represented by Attorney David Jeffrey. Bowen is represented by Attorney Ralph E. Elliott.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtor, August C. Hohl, is a pilot for Eastern Air Lines, Inc., and has an interest in two pension plans, a Fixed Benefit Retirement Income Plan (Plan A) and a Variable Benefit Retirement Plan (Plan B), and a Wage Investment Program, which was funded by shares of Eastern's stock. All three plans satisfy the requirements of the Employment Retirement Income Security Act of 1974. 29 U.S.C. Section 1001 *et seq.* (ERISA). The Debtors filed for relief pursuant to Chapter 7 of the Code on August 30, 1985. The Debtors claim their interests in the pension plans and Wage Investment Program as exemptions. August C. Hohl is 53 years of age.

Plan A is funded by contributions of Eastern based on a percentage of the Debtor's salary. The Debtor may also contribute to the plan. The plan provides:

> 13.2 Except as may be otherwise required by law, no pension under the Plan will be subject in any manner to alienation, sale, transfer, assignment, pledge attachment or encumbrance of any kind.

Plan A, p. 28. The plan also provides that the Debtor may receive pension benefits upon early retirement if the Debtor so chooses. Early retirement may occur as early as 15 years prior to normal retirement, which is age 60. The plan also provides for benefits upon Debtor's disability to perform his job. Benefits received are to be paid monthly, based on several different optional calculations. The Debtor cannot take benefits in a lump sum payment although the plan does provide that the Debtor may propose "an optional payment form of any other type accepted by the Funding Agent and consented to by" Eastern. The Debtor has made no voluntary contributions to Plan A.

Plan B is substantially similar to Plan A. Contributions are made by the airline and the Debtor has the option of making voluntary contributions to the plan. The benefits are non-assignable or attachable. The early retirement provisions are substantially similar to those contained in Plan A. Benefits are taken in the form of periodic payments based on several different optional calculations. The Debtor may not take the benefits as a lump sum payment. The Debtor has contributed $49.97 to Plan B.

The Wage Investment Program is funded by deductions from the Debtor's salary. The money deducted from the Debtor's salary is used for general corporate purposes. In return, Eastern places, in trust, shares of its stock. The Debtor's interest in the trust is non-assignable or attachable. However, the terms of the trust are not before the Court. Apparently, the terms of the trust are contained in a Letter of Agreement dated January 31, 1984, between Eastern and the pilot's union. A copy of the Letter of Agreement has not been supplied.

The Debtor's interest in the Wage Investment Program is $6,654.61. The shares of stock from the Program have been liquidated and are being held in trust.

 Section 541 of the Code provides, in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

*　　*　　*　　*　　*　　*

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor,

*　　*　　*　　*　　*　　*

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

11 U.S.C. Section 541.

The language of Section 541(c)(2) seems clear. Property of the estate does not include the beneficial interest of a trust that contains a restriction on transfer that is enforceable under nonbankruptcy law. However, Congress, in enacting Section 541(c)(2) said:

The bill ... continues over [from the former Bankruptcy Act] the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law.... The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 176 reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6136. This statement has resulted in inconsistent judicial decisions, especially where pension plans under ERISA are concerned.

The case law can be divided into three separate lines of decision. Those which hold that Section 541(c)(2) does not apply to non-traditional state law spendthrift trusts like ERISA pension plans, *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *Regan v. Ross*, 691 F.2d 81 (2nd Cir.1982); those which apply state law to test the enforceability of a nonalienability clause contained in an ERISA pension, *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir. 1985); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Goff*, 706 F.2d 574 (5th Cir.1983); and, those which hold that ERISA is applicable nonbankruptcy law within the meaning of Section 541(c)(2), *In re Threewitt*, 24 B.R. 927 (D.Kan. 1982).

None of the theories is entirely satisfying, and understandably so considering the conflicting declarations of Congress. However, this Court tends to agree with the line of decisions which applies state law to determine the enforceability of a non-alienability clause contained in an ERISA type pension plan.

Under the former Bankruptcy Act, property of the estate included, generally, all interests of a debtor which were attachable by creditors or transferable by the debtor. Excluded, then, were the beneficial interests in trusts that contained enforceable non-alienability clauses. The group of excluded trusts included interests in state spendthrift trusts and ERISA type pension plans.

When Congress promulgated the Bankruptcy Code, the concept of property of the estate was enlarged to include all interests of the debtor, including those which were otherwise not transferable by the debtor. Section 541(c)(1). However, subsection (c)(2) carved out an exception. The legislative history of this subsection indicates that Congress intended to exempt, from property of the estate, those interests that were subject to state spendthrift type restrictions.

The non-alienability clause in an ERISA type pension plan is not subject to state spendthrift trust law. Section 1144(a) of Title 29 provides that ERISA pre-empts state law to the extent inconsistent with subchapters I and III of ERISA. See, *MacLean v. Ford Motor Co.*, 831 F.2d 723 (7th Cir.1987). Included within those provisions which pre-empt state law is Title 29 Section 1056(d)(1), which requires qualified plans to contain non-alienability provisions. Congressional intent was to protect pension benefits that would not otherwise be protected in the few states that did not recognize spendthrift provisions. 12 Cong.Rec. 29,933 (1974).

In enacting Section 541(c)(2), Congress did not exclude from property of the estate "traditional state spendthrift trusts". In fact, Congress keyed the applicable language to nonbankruptcy law and, in legislative comments, referred to state spendthrift laws. At first blush, it would seem that this scheme would result in the inconsistent protection of pension benefits that Congress wished to prevent when legislating ERISA; and it does. However, it was also Congressional intent to allow state law determine the rights of parties in a myriad of other facets of bankruptcy law. Section 541(c)(2) is just one such example. Therefore this Court finds that Section 541(c)(2) applies to trusts that meet the relevant state spendthrift criteria. In this case, Plan A and Plan B provide that New York law applies.

Generally, New York recognizes spendthrift provisions contained in a trust. *In re Wentworth*, 230 N.Y. 176, 129 N.E. 646 (1920). *See also, In re Irving Trust Co.*, 129 Misc.2d 639, 493 N.Y.S.2d 924 (1985); *In re Estate of Paine*, 103 Misc.2d 393, 425 N.Y.S.2d 1018 (1980); *In re Estate of Dexter*, 75 Misc.2d 239, 347 N.Y.S.2d 93 (1973); and, *In re Estate of Vought*, 57 Misc.2d 396, 293 N.Y.S.2d 34 (1967). The New York courts have gone so far as to equate pension benefits of an ERISA qualified plan to a spendthrift trust. *Hemsley–Spear, Inc. v. Winter*, 74 A.D.2d 195, 426 N.Y.S.2d 778 (1980); Aff'd., 52 N.Y.2d 984, 438 N.Y.S.2d 79, 419 N.E.2d 1078 (1981). However, New York does not protect the income and corpus of a self-settled trust from the claims of creditors. N.Y. E.P.T.L. Section 7–3.1 (McKinney 1986). This rule has been applied to attach a debtor's interest in his I.R.A. or Keogh account. *Lerner v. Williamsburg Savings Bank*, 87 Misc.2d 685, 386 N.Y.S.2d 906 (1976); *In re Mastroeni*, 57 B.R. 191 (Bankr.S.D.N.Y.1986).

In applying New York law to the case at bar, the funds which were contributed to Plan A and Plan B by Eastern would not pass to the estate. The funds contributed to Plan B by the Debtor do pass to the estate because they were voluntary and in the nature of a self-settled trust. There is not sufficient information before the Court to determine whether the funds deducted from the Debtor's salary pursuant to the Wage Investment Program pass to the estate. The question shall turn on the voluntariness of the contributions

and the Debtor's rights in the stock. That information is contained, the Court suspects, in the "Letter Agreement between Eastern Air Lines, Inc., and the Airline Pilots in the Service of Eastern Air Lines, Inc., as represented by the Airline Pilots Association International" of January 31, 1984.

On the basis of the foregoing, the Court finds:

1. Contributions made to Plan A and Plan B by Eastern should not pass to the estate by operation of Section 541(c)(2);

2. The voluntary contributions made to Plan B by the Debtor should pass to the estate by operation of Section 541(a) and (c)(1); and

3. The case should be scheduled for status December 14, 1987, at 9:30 A.M.

IT IS SO ORDERED.